IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---------------------------------------------------------- x
                                                           :
ABDUR RAZAKAH, *et al.*,                                   :
                                                           :
                            Petitioners,                   :
                                                           :
                v.                                         :   Civil Action No. 05-cv-02370 (EGS)
                                                           :
GEORGE W. BUSH, *et al.*,                                  :
                                                           :
                            Respondents.                   :
                                                           :
---------------------------------------------------------- x

**PETITIONERS' MOTION FOR AN ORDER TO SHOW CAUSE
WHY RESPONDENTS SHOULD NOT BE HELD IN CONTEMPT**

**ORAL ARGUMENT REQUESTED**

KL3:2513140.3

Petitioners Abdur Razakah and Ahmad Doe ("Petitioners"), by and through their undersigned counsel, respectfully move for an order to show cause why Respondents should not be held in contempt of the Amended Protective Order entered by the Court on March 17, 2006. Petitioners' motion should be granted for the following reasons.

### Introduction

Petitioners are Uighurs, a Turkic Muslim minority group native to western China. We are informed and believe that Petitioners – like many other Uighur detainees currently detained by Respondents at the U.S. Naval Station at Guantánamo Bay, Cuba ("Guantánamo") – may have been cleared for release more than a year ago but nevertheless remain imprisoned indefinitely and virtually *incommunicado*, without charge, without access to counsel, and without being afforded any fair process by which they might challenge their detention. *See* Petition for Writ of *Habeas Corpus* ¶¶ 6, 18 (filed Dec. 12, 2005) (the "Petition"). Because they have no meaningful way of securing legal representation for themselves, Petitioners filed the Petition through their next friend, Usama Hasan Abu Kabir. To this day, we have not been able to visit or speak with our clients because Respondents have engaged in a pattern of obstructive and delaying tactics, totally lacking in legal merit.

On January 12, 2006, Petitioners filed a motion for expedited entry of the Amended Protective Order previously entered by Judge Joyce Hens Green in *Ab-dah v. Bush*, No. 04-CV-1254 (HHK) (D.D.C.), and other coordinated Guantánamo detainee cases to make it possible for Petitioners to meet with their counsel. Respondents opposed our motion on the ground that the Court lacked jurisdiction to grant the requested relief pursuant to the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2680 (the "DTA"). Respondents also suggested – without explicitly moving – that the Court should dismiss the Petition for lack of proper next-friend standing. Petitioners replied that their motion did not implicate the DTA

KL3:2513140.3

and that Respondents had violated the terms of an informal stay imposed throughout the District Court pending the final resolution of the appeals of *Khalid v. Bush*, No. 04-CV-1142 (RJL), 355 F. Supp. 2d 311 (D.D.C. 2005), and *In re Guantánamo Detainee Cases*, No. 02-CV-0299 (CKK), 355 F. Supp. 2d 443 (D.D.C. 2005), before the Court of Appeals. Petitioners argued specifically that by raising a next-friend objection without moving to dismiss the Petition on that basis, Respondents were attempting to circumvent the Court's clear admonition against substantive motion practice while the informal stay was pending and its equally clear directive that the informal stay would not operate to deprive detainees of access to counsel.[1]

On March 17, 2006, this Court entered an order granting Petitioners' motion and entered the Amended Protective Order.[2] *See* Dixon Decl. Ex. C. Regrettably, Respondents are now compounding the error of their prior meritless objections to entry to the Amended Protective Order by simply refusing to obey it.

On April 4, 2006, undersigned counsel submitted a request to Respondents for permission to visit Petitioners at Guantánamo between May 15 and 18, 2006. Respondents did not respond to the request until the evening of April 12, 2006, when they denied it "[i]n light of

---

[1] On February 2, 2006, the government invited undersigned counsel to provide input regarding Petitioners for review and consideration by the 2006 Administrative Review Boards ("ARBs"), which are charged with determining whether detainees classified as "enemy combatants" may be released from Guantánamo. *See* Exhibit A to the Declaration of J. Wells Dixon, sworn to on April 20, 2006, filed herewith ("Dixon Decl."). We filed a submission on February 24, 2006. *See* Dixon Decl. Ex. B. Respondents' incessant refusal to allow Petitioners access to counsel at this time significantly prejudices their ability to prepare for the 2006 ARB process.

[2] Many other courts similarly entered the Amended Protective Order over the government's objections after enactment of the DTA. *See, e.g., Zadran v. Bush*, No. 05-cv-02367 (D.D.C. Apr. 12, 2006) (Roberts, J.); *Alsaaei v. Bush*, No. 05-cv-02369 (D.D.C. Apr. 12, 2006) (Roberts, J.); *Said v. Bush*, No. 05-cv-02384 (D.D.C. Apr. 12, 2006) (Roberts, J.); *Al Shareef v. Bush*, No. 05-cv-02458 (D.D.C. Apr. 12, 2006) (Roberts, J.); *Awad v. Bush*, No. 05-cv-02379 (D.D.C. Apr. 11, 2006) (Robertson, J.); *Thabid v. Bush*, No. 05-cv-02398 (D.D.C. Mar. 21, 2006) (Huvelle, J.); *Labed Ahmed v. Bush*, No. 05-cv-01234 (D.D.C. Mar. 2, 2006) (Sullivan, J.); *Wahab v. Bush*, No. 05-cv-00886 (D.D.C. Jan. 10, 2006) (Sullivan, J.); *Mohammad v. Bush*, 05-cv-00879 (D.D.C. Jan. 9, 2006) (Walton, J.); *Bostan v. Bush*, 05-cv-00883 (D.D.C. Jan. 9, 2006) (Robertson, J.); *Khiali-Gul v. Bush*, 05-cv-00877 (D.D.C. Jan. 6, 2006) (Robertson, J.).

KL3:2513140.3

[their] pending objections regarding next-friend standing." Dixon Decl. Ex. D. This objection was entirely unexpected and appeared to have been lodged in error, given that there is now no next-friend challenge pending before the Court. Accordingly, we asked Respondents to reconsider their position. In making this request, we noted (i) the Court's March 17, 2006 ruling entering the Amended Protective Order despite Respondents' next-friend argument, (ii) Respondents' failure to move for reconsideration or appeal that ruling, and (iii) the absence of any separate motion by Respondents to dismiss the Petition for lack of next-friend standing. Under these circumstances, we questioned whether any opposition to our request for access to Petitioners at this time could be made in good faith. *See id.*

In response, Respondents acknowledged the Court's entry of the Amended Protective Order but continued to assert that "the petition in this case has not been properly authorized." Specifically, Respondents argued that the Amended Protective Order requires counsel to provide evidence of their authority to represent Petitioners before being permitted access to them.[3] *See id.* This position was based on a tortured and clearly incorrect reading of the Amended Protective Order that – as Respondents well know – was previously and repeatedly rejected by other judges in this District.

Accordingly, Petitioners ask the Court to put an end – hopefully, once and for all – to Respondents' obstructionist tactics by holding Respondents in contempt of Court for improperly refusing to permit Petitioners to meet with their counsel. We submit that the sanction of contempt is appropriate because Respondents are knowingly defying the clear terms of the

---

[3] Respondents also indicated for the first time on April 17, 2006, that they are not scheduling any *habeas* counsel visits to Guantánamo during the week of May 14th due to tentatively scheduled military commissions visits and hearings. If Respondents establish that counsel visits would not be possible during that time, we would be willing to postpone our trip to the following week.

Amended Protective Order entered by this Court despite several recent orders and rulings by other judges in this District squarely rejecting Respondents' pretenses for doing so.

## Argument

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). The Supreme Court has held that court orders place upon litigants a "duty to obey." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949). Failure to abide by this duty is grounds for contempt. *See* 17 Am. Jur. 2d *Contempt* § 1 (2005) (defining contempt to include "disobedience to the orders of the judiciary"). Moreover, "a finding of bad faith on the part of the contemnor is *not* required. Indeed, the law is clear in this circuit that 'the [contemnor's] failure to comply with the court decree need not be intentional.'" *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1016 (D.C. Cir. 1997) (quoting *NLRB v. Blevins Popcorn Co.*, 659 F.2d 1173, 1183 (D.C. Cir. 1981)). A party moving for civil contempt must only establish by clear and convincing evidence that "the putative contemnor has violated an order that is clear and unambiguous." *Armstrong v. Executive Office of the President*, 1 F.3d 1274, 1289 (D.C. Cir. 1993) (quoting *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 16 (1st Cir. 1991)). Respondents' refusal to comply with the clear and unambiguous terms of the Amended Protective Order entered by this Court satisfies this test and justifies an order of contempt.

### I.
### RESPONDENTS SHOULD BE HELD IN CONTEMPT FOR REFUSING TO COMPLY WITH THE COURT'S PRIOR ORDER

Respondents' only purported basis for refusing to permit Petitioners to meet with their counsel – a challenge to their next-friend's standing to bring the Petition – is meritless and has already been implicitly rejected by this Court. As discussed above, the Court entered the Amended Protective Order in this case on March 17, 2006 – despite Respondents' next-friend

objections – and Respondents did not move for reconsideration or otherwise appeal that decision.[4] Nor did Respondents separately move to dismiss the Petition for lack of next-friend standing. Yet Respondents continue to assert their next-friend objection as if the Court had never considered this issue or ruled on Petitioners' motion. According to Respondents' position, the Court's prior ruling entering the Amended Protective Order has no impact on Petitioners' access to their counsel and is effectively meaningless. Respondents have simply arrogated to themselves unfettered discretion to determine whether or to what extent counsel have the legal authority to represent Petitioners in spite of the Court's prior ruling entering the Amended Protective Order. Their conduct is a transparent attempt to evade what the Court's clear and unambiguous ruling requires and thereby continue to frustrate Petitioners' rightful access to counsel.

## II.
## RESPONDENTS SHOULD BE HELD IN CONTEMPT BECAUSE THEIR REFUSAL TO ALLOW PETITIONERS TO MEET WITH THEIR COUNSEL VIOLATES THE AMENDED PROTECTIVE ORDER AND CONTRAVENES RECENT DECISIONS BY OTHER JUDGES IN THIS DISTRICT

By its unambiguous terms, the Amended Protective Order permits counsel access to detainees once the order is entered. The Amended Protective Order was put in place to "establish the procedures that *must be followed* by . . . all . . . counsel involved in these cases." Amended Protective Order ¶ 2 (emphasis added). It specifically provides that the government must afford petitioners' counsel reasonable access to their clients at Guantánamo. *See id.* Ex. A, § III.D.1 ("Reasonable efforts will be made to accommodate the counsel's request regarding the scheduling of a meeting.").

---

[4] The deadlines for reconsideration and appeal have long since passed.

As Judge Friedman recently held in *Al Salami v. Bush*: "Central to the Protective Orders are their provisions for access to counsel. Detainees' right to meet with counsel under the Protective Order is independent of the (still-unresolved) question of the Court's jurisdiction to rule on their *habeas* petitions." Order at 1, *Al Salami v. Bush*, No. 05-cv-02452 (PLF) (D.D.C. Apr. 13, 2006) (entering the Amended Protective Order over Respondents' next-friend objection) (Dixon Decl. Ex. E).[5] In reaching this conclusion, Judge Friedman cited Magistrate Judge Kay's recent decision in *Adem v. Bush* holding: "The Protective Order manifestly does not require evidence of authority to represent a detainee as a ***prerequisite*** to counsel meeting with a detainee. Rather, the Protective Order plainly provides that counsel who purportedly represent a particular detainee must provide evidence of their authority to represent that detainee within ***10 days*** of counsel's ***second visit*** with the detainee." Mem. Op. at 5, *Adem v. Bush*, No. 05-cv-00723 (RWR) (AK) (D.D.C. Mar. 14, 2006) (emphases in original) (Dixon Decl. Ex. G).[6] In other words, once the Amended Protective Order is entered and counsel comply with its procedures for access to detainees, "[n]othing more is necessary." *Id.* at 20.[7]

Respondents nonetheless claim that the Amended Protective Order requires counsel to provide evidence of our authority to represent Petitioners before being permitted access to them. In support of this argument, Respondents misleadingly cite only to Section III.C.1 of Exhibit A of the Amended Protective Order with the following parenthetical quotation:

---

[5] We note that Respondents made substantially similar arguments in opposition to entry of the Amended Protective Order in *Al Salami* as they did in opposition to entry of that Order in this case. *See* Resp'ts' Mem. Opp'n Pet'rs' Mot. Entry Protective Order, *Al Salami v. Bush*, No. 05-cv-02452 (PLF) (D.D.C. Mar. 27, 2006) (dkt. no. 8-1) (Dixon Decl. Ex. F).

[6] Respondents moved for reconsideration of Magistrate Judge Kay's ruling on April 4, 2006.

[7] Undersigned counsel have always complied fully with the counsel access requirements set forth in the Amended Protective Order, including by submitting to a thorough background check and obtaining the appropriate security clearances for those attorneys who intend to visit Petitioners.

"Prior to being permitted access to the detainee, . . . counsel shall provide evidence of his or her authority to represent the detainee." Dixon Decl. Ex. D. But Respondents fail to acknowledge what Judge Friedman and Magistrate Judge Kay have already pointed out in their prior rulings rejecting Respondents' interpretation of the Amended Protective Order: "that the very next paragraph [of that Order] establishes a different deadline for providing the very 'evidence of authority' referred to in paragraph C.1." Mem. Op. at 24, *Adem*, No. 05-cv-00723 (Dixon Decl. Ex. G); Order at 1, *Al Salami*, No. 05-cv-02452 (Dixon Decl. Ex. E) ("affording detainees access to counsel under the Protective Orders will help resolve any ambiguity as to multiple petitions" or next-friend objections). Indeed, as indicated above, the Amended Protective Order provides that "[c]ounsel shall provide evidence of his or her authority to represent the detainee as soon as practicable and in any event no later than ten (10) days after the conclusion of a second visit with the detainee." Amended Protective Order Ex. A, § III.C.2. As Magistrate Judge Kay explained in his ruling, "[t]o accept Respondents' interpretation of Paragraph C.1 would render Paragraph C.2 completely redundant. . . . The Court simply cannot fathom that such a carefully crafted Protective Order . . . would have been so careless in its use of language." Mem. Op. at 25, 27, *Adem*, No. 05-cv-00723 (Dixon Decl. Ex. G). Accordingly, Respondents' selective and misleading interpretation of the Amended Protective Order – which again defies prior contrary court rulings – should be summarily rejected.

### III.
### RESPONDENTS MUST OBEY THE AMENDED PROTECTIVE ORDER EVEN IF THEY WISH TO CHALLENGE THE COURT'S JURISDICTION

Respondents are not free to disobey the Amended Protective Order, even if they believe the Court lacked jurisdiction to enter the order. *See Walker v. Birmingham*, 388 U.S. 307, 314 (1967) ("until [the decision of a court of first instance] is reversed for error by orderly

review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished") (quoting *Howat v. Kansas*, 258 U.S. 181, 189-90 (1922)). Under these circumstances, Respondents are required to comply with the Amended Protective Order out of "respect for judicial process." *Walker*, 388 U.S. at 321.

Thus, whatever challenges Respondents may contemplate to this Court's jurisdiction – whether based on standing, the DTA or any other matter – Respondents remain subject to the Court's inherent contempt power. *See Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993) ("[A] protective order, like any ongoing injunction, is always subject to the inherent power of the district court."); *Broderkick v. Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006) (same); *cf. Gambale v. Deutsche Bank, AG*, 377 F.3d 133, 140-41 (2d Cir. 2004) (recognizing court's jurisdiction to modify protective orders that remain in effect, even after dismissal of underlying litigation); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) (same).

Faced with the same specious jurisdictional objections from the government in the *Adem* case, Magistrate Judge Kay concluded, "[i]t would be untenable for the District Court to be put in a position where it is powerless to enforce its own protective order, presently in effect and over which it has continuing control. The question of when, and under what circumstance the existing Protective Order permits [Petitioners] to meet with [their] lawyer[s] has no bearing on the question of which Court has jurisdiction to review the merits of Petitioner[s'] challenge to [their] detention." Mem. Op. at 22, *Adem*, No. 05-cv-00723 (Dixon Decl. Ex. G). In light of Judge Kay's clear and correct explanation of the relevant principles, it is nothing short of stunning that Respondents persist in denying Petitioners here access to their counsel.

## IV.
## RESPONDENTS HAVE FAILED TO ACT IN GOOD FAITH

Respondents' improper conduct here can only be understood as part of a willful campaign to frustrate and delay Petitioners' access to their counsel. These actions appear calculated to eviscerate the Supreme Court's decision in *Rasul v. Bush*, 542 U.S. 466 (2004), holding that Petitioners are entitled to challenge the legality of their detention in the District Court, *see id.* at 485, and the decisions of courts in this District holding that detainees have a legal right to be represented by counsel in their *habeas* challenges. *See, e.g., Al-Odah v. United States*, 346 F. Supp. 2d 1, 8 (D.D.C. 2004) (Kollar-Kotelly, J.).

The "next-friend" challenges that Respondents have taken to employing for this obstructionist purpose represent a particularly disingenuous tactic. Respondents have brought these next-friend challenges regardless of the content of the actual next-friend authorizations at issue – thus, treating any request for counsel made on behalf of a detainee as presumptively invalid.[8] Such treatment is contrary to the clear factual record. To our knowledge, in not a single case in which Respondents have challenged a next-friend authorization has the detainee in question later indicated that, contrary to the authorization, he did not wish to be represented by counsel.

The very premise of Respondents' position – that a detainee might *not* want counsel's assistance in obtaining his release from Guantánamo – strains credulity. These men have been detained without charge for years, they do not speak English and are denied the opportunity to learn English, and have not been permitted to contact their families or anyone else

---

[8] We note that, as Magistrate Judge Kay recently held, "[f]rom the time the Protective Order was first entered until approximately mid-summer 2005, the Government raised no objection to the practice of detainees initiating a *habeas* petition through a fellow detainee who was a friend because once the detainee confirmed his request for counsel, the question of 'next friend' standing was moot." Mem. Op. at 11, *Adem*, No. 05-cv-00723 (Dixon Decl. Ex. G).

who might be able to offer them assistance. And even if Respondents harbored any legitimate concern that a detainee might prefer to remain unrepresented, there is no sound reason to deny counsel the opportunity to travel to Guantánamo (at counsel's own expense, after spending months obtaining security clearance and litigating issues like entry of the Amended Protective Order) in order to confirm whether a detainee indeed desires counsel to represent him. The only possible justification for Respondents' actions is to frustrate and delay detainees' rightful access to counsel.

Moreover, continuing to hold Petitioners *incommunicado* is particularly pernicious under the circumstances here, given the reports, referenced above, that Petitioners have been cleared for release. *See* Petition ¶¶ 6, 18. Denying Petitioners access to legal assistance – indeed, any access to the outside world – makes it impossible to confirm their status or to assist them in relocating. That is precisely what Judge Robertson concluded had transpired in *Qassim v. Bush*, 382 F. Supp. 2d 126, 127 (D.D.C. 2005), a case involving two other Uighur detainees who were captured with Petitioner Abdur Razakah by bounty hunters in Pakistan and sold to the United States military for $5,000 each. Respondents should not be permitted here to hide from Petitioners' counsel or the Court – as they did in *Qassim* – Petitioners' expected eligibility for release by openly defying the prior orders of the Court.

## Conclusion

For all of the foregoing reasons, Petitioners respectfully request that the Court hold Respondents in contempt of the Amended Protective Order and order them to permit Petitioners access to their counsel.

Dated:   New York, New York
         April 20, 2006

>                                    Respectfully submitted,
>
>                                    Counsel for Petitioners:
>
>                                    /s/ Paul Schoeman
>                                    Paul Schoeman (Pursuant to LCvR 83.2(g))
>                                    J. Wells Dixon (Pursuant to LCvR 83.2(g))
>                                    Joel Taylor (Pursuant to LCvR 83.2(g))
>                                    Michael J. Sternhell (Pursuant to LCvR 83.2(g))
>                                    KRAMER LEVIN NAFTALIS & FRANKEL LLP
>                                    1177 Avenue of the Americas
>                                    New York, New York 10036
>                                    Tel: (212) 715-9100
>                                    Fax: (212) 715-8000
>
>                                    Alison Sclater (Pursuant to LCvR 83.2(g))
>                                    245 East 80th Street
>                                    New York, New York 10021
>                                    Tel: (212) 717-2736
>
>                                    Barbara Olshansky (NY-0057)
>                                    Tina Monshipour Foster (Pursuant to LCvR 83.2(g))
>                                    Gitanjali S. Gutierrez (Pursuant to LCvR 83.2(g))
>                                    CENTER FOR CONSTITUTIONAL RIGHTS
>                                    666 Broadway, 7th Floor
>                                    New York, New York 10012
>                                    Tel: (212) 614-6439
>                                    Fax: (212) 614-6499