UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SALEEM MUHOOD ADEM, )<br>  )<br>    Petitioner, )<br>  )<br>        v. )<br>  )<br>GEORGE W. BUSH et al., )<br>  )<br>    Respondents. )<br>  ) | Civil Action No. 05-723 (RWR) (AK) |

### MEMORANDUM OPINION AND ORDER

Petitioner Saleem Muhood Adem petitioned for a writ of habeas corpus challenging the legality of his detention at the United States Naval facility at Guantanamo Bay, Cuba. Respondents have moved for an order requiring petitioner to show cause why the petition should not be dismissed for lack of proper "next-friend" standing. Petitioner opposes this motion, rejecting respondents' premise that the direct petition is somehow improper or suspect. Because respondents have established no facts and cited no law on which to base a conclusion that the direct petition filed by counsel was unauthorized, the motion will be denied.

Respondents also seek reconsideration under Fed. R. Civ. P. 72(a) and Local Civil Rule 72.2(b) of the Memorandum Opinion and Order issued by Magistrate Judge Alan Kay requiring respondents to permit petitioner's counsel access to their client. Because

-2-

the magistrate judge's decision was neither clearly erroneous nor contrary to law, respondents' motion for reconsideration will be denied.

BACKGROUND

Adem is one of hundreds of people being held as enemy combatants at the United States Naval facility at Guantanamo Bay, Cuba. In late 2004, Adem, who does not speak English, asked another detainee, Bisher Al-Rawi, who was represented by attorney George Brent Mickum, to help Adem contact an attorney. Adem also told Al-Rawi that Adem had sent a letter directly to Mickum. On January 4, 2005, Al-Rawi also sent a letter to Mickum, relaying Adem's request for counsel. (See Dkt. 31, Decl. of Bisher Al-Rawi ("Al-Rawi Decl."), ¶¶ 1-9, Jan. 7, 2006.)

In early 2005, attorney Murray Fogler contacted the Center for Constitutional Rights, a public interest group that has coordinated the prosecution of many habeas petitions on behalf of Guantanamo detainees, to volunteer to represent one of the detainees. He learned of Adem's request and agreed to represent him. Fogler was later joined by Rachel Clingman in representing Adem in his habeas petition. (See Dkt. 25, Decl. of Murray Fogler ("Fogler Decl."), ¶¶ 1-3, Dec. 9, 2005.)

On June 3, 2005, a protective order was entered in anticipation of the sensitive information that usually is involved in these Guantanamo detainee cases and the unusual

-3-

security provisions attendant to the circumstances of the detainee's confinement. See Dkt. 12, Protective Order, June 3, 2005. The terms of this protective order are substantially identical to the terms of the protective order entered by Judge Joyce Hens Green on November 8, 2004, and amended and supplemented November 10 and December 13, 2004, in In re Guantanamo Bay Detainee Cases, 344 F. Supp. 2d 174 (D.D.C. 2004), after the parties in those cases had vigorously negotiated and litigated the terms of that order.

The protective order governs counsels' communication with petitioner Adem by its incorporation of the Revised Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantanamo Bay, Cuba ("Revised Access Procedures"). See Protective Order, Ex. A. Prior to entry of the protective order, respondents stated that they "[did] not intend [by seeking a stay] to block counsel access to properly represented petitioners" and that they "[did] not object to entry in [this case] of the protective order previously entered in other Guantanamo detainee cases, along with appropriate supplementary orders, to permit such access." (See Dkt. 4, Mot. to Stay Proceedings Pending Related Appeals at 2, 4/13/2005.)

In accord with the protective order's requirements, Fogler and Clingman each applied for and received a security clearance, filed a memorandum of understanding regarding the terms of the

-4-

protective order, and submitted a Notification of Representation. Respondents informed Fogler and Clingman that "we require evidence that petitioner Adem has authorized you directly to initiate this litigation before you will be provided access to him." (Dkt. 25, Email from Andrew Warden to Fogler and Clingman, Nov. 17, 2005, appended as Ex. D to Fogler Decl.) Later, counsel for respondents re-stated their position:

> We cannot agree to process or approve this visit request until we receive evidence of your authority to represent the petitioner in this case, as required by paragraph III.C.1 of the Revised Procedures for Counsel Access [appended as Ex. A to the protective order of June 3, 2005]. . . . [Y]ou have not provided us with appropriate evidence of your authority to initiate litigation on petitioner's behalf. . . . [T]he petition in this case . . . is a petition brought directly on petitioner Adem's behalf. Accordingly, we require evidence that petitioner Adem has authorized you directly to initiate this litigation before you will be provided access to him.

(Dkt. 25, Email from Warden to Fogler and Clingman, 11/29/2005, appended as Ex. G to Fogler Decl.)

Counsel for Adem filed an emergency motion to hold respondents in contempt of the protective order and to compel access to their client. Respondents opposed the motion. In addition, respondents filed a motion requesting a show cause order directing petitioner to show why the case should not be dismissed for lack of proper next-friend standing.

The emergency motion regarding the operation of the protective order was referred to Magistrate Judge Kay for

-5-

determination in accord with an Order entered in this case and many others filed by or on behalf of Guantanamo detainees, that referred "all Motions pertaining to interpretation or construction of any protective order which has been entered . . . to Magistrate Judge Alan Kay pursuant to LCvR 72.2(a)." Order, Nov. 2, 2005. After considering the parties' submissions and holding a conference with the parties, Magistrate Judge Kay interpreted the plain language of the protective order and determined that respondents' refusal to facilitate counsels' visit with their client was not supported by the terms of the protective order and ordered respondents promptly to permit counsel to meet with petitioner in person. Dkt. 36, Memorandum Opinion ("Mem. Op."), Mar. 14, 2006; Dkt. 37, Order, Mar. 14, 2006.

Respondents now contend that the magistrate judge's determination, as set forth in his Memorandum Opinion, is clearly erroneous and contrary to law, and urge that the accompanying Order dated March 14, 2006, be vacated. (See Dkt. 38, Mot. for Stay and Reconsideration ("Mot. for Recons."), at 2, Apr. 4, 2006.) They also argue that the magistrate judge had no authority to issue the Order. (Id. at 16-39.) Respondents also seek a stay pending resolution on the merits of the motion. (Id. at 2, 39-40.) Petitioner opposes the relief respondents seek.

-6-

## DISCUSSION

I.  MOTION FOR ORDER TO SHOW CAUSE

In respondents' view, the direct petition filed by counsel for Adem should have been filed as a next-friend petition. Further, they argue that as a next-friend petition, it fails to meet constitutional standards for next friend standing. Therefore, they seek an order directing petitioner to show cause why this case should not be dismissed for lack of proper standing. (Dkt. 27, Resp.'s Mot. for Order to Show Cause Why Case Should Not Be Dismissed for Lack of Proper "Next Friend" Standing at 9-20.) Petitioner, citing long-established law, counters that "'[w]hen an attorney of record appears in an action for one of the parties, his authority, in the absence of any proof to the contrary, will be presumed.'" (Dkt. 28, Pet'r's Response to Mot. for Order to Show Cause at 3, quoting Hill v. Mendenhall, 88 U.S. 453, 454 (1874).)

"[T]he presumption is that an attorney at law who appears in regular manner on behalf of a party litigant has authority to do so; and one who would successfully challenge his authority must present substantial proof in the form of countervailing evidence that authority is lacking, in order to justify, on that ground, an order to strike a pleading from the files." Booth v. Fletcher, 101 F.2d 676, 683 (D.C. Cir. 1939). Respondents have not offered substantial proof that Adem did not intend or desire

-7-

that counsel file the petition on his behalf. Accordingly, respondents' motion for a show cause order will be denied.

II. MOTION FOR RELIEF PURSUANT TO RECONSIDERATION

"Upon a motion for reconsideration . . ., a judge may modify or set aside any portion of a magistrate judge's order . . . found to be clearly erroneous or contrary to law." LCvR 72.2(c); accord Fed. R. Civ. P. 72(a) (directing that a judge "shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law."). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).

The dispute referred to Magistrate Judge Kay posed the sole issue of the proper interpretation of a specific term of the protective order - - "evidence of [counsel's] authority to represent the detainee." The disputed term is found in two adjacent paragraphs of the protective order's Revised Access Procedures:

> 1. Prior to being permitted access to the detainee, counsel must provide DoD with a *Notification of Representation*. This Notification must include the counsel's licensing information, business and email addresses and phone number, as well as the name of the detainee being represented by the counsel. Additionally, counsel shall provide evidence of his or her authority to represent the detainee.

-8-

> 2. Counsel shall provide evidence of his or her authority to represent the detainee as soon as practicable and in any event no later than ten (10) days after the conclusion of a second visit with the detainee. The Court recognizes that counsel may not be in a position to present such evidence after the initial meeting with a detainee. Counsel for detainees and counsel for respondents shall cooperate to the fullest extent possible to reach a reasonable agreement on the number of counsel visits allowed. Should counsel for a detainee believe that the government is unreasonably limiting the number of visits with a detainee, counsel may petition the Court at the appropriate time for relief.

Protective Order, Ex. A, Revised Access Procedures §§ III.C.1 & 2. The magistrate judge concluded that the condition "prior to being permitted access to the detainee," applied to only the Notification of Representation, that counsel for petitioner was required by the terms of the order to make only one evidentiary showing of his or her authority to represent the detainee, and that the evidentiary showing is due no later than ten days after a second visit with the detainee.

Relying primarily on the fact that the term appears in two separate paragraphs, respondents contend that the term means different things in paragraph one and paragraph two, and requires "separate" submissions. (Mot. for Recons. at 26.) Specifically, respondents argue that

> the [Revised] Access Procedures require that "[p]rior to being permitted access to the detainee," counsel must "provide evidence of his or her authority to represent the detainee," and then subsequently provide an additional, direct authorization of representation from the detainee on whose behalf the *habeas* petition

-9-

was filed, "no later than ten (10) days after the conclusion of a second visit with the detainee." See [Revised] Access Procedures § III.C.

(Mot. to Recons. at 25.) Respondents also contend that the parties negotiating the Revised Access Procedures understood that "access [would] be[] conditioned on initial proof of authority to represent a detainee with the requirement that direct authorization be submitted 'as soon as practical [sic]' thereafter." (Id. at 28-29.) Thus, respondents argue that the disputed phrase in the Revised Access Procedures requires (*i*) a "separate" (id. at 26), two-step sequential showing of evidence that (*ii*) differs in quantum of proof, with the latter showing requiring "additional, direct" evidence. (Id. at 25.) In opposition, petitioner argues that Magistrate Judge Kay's interpretation was correct and that respondents' interpretation should be rejected. (Pet'r's Response to Mot. for Stay and Recons. at 5-7.)

The starting point for interpreting a court order is the plain meaning of the text.[1] Following this rule, Magistrate

---

[1] See, e.g., Armstrong v. Executive Office of the President, 830 F. Supp. 19, 22 (D.D.C. 1993) ("[g]iving plain meaning to [the] language" of the protective order); Positive Software Solutions, Inc. v. New Century Mortgage Corp., 337 F. Supp. 2d 862, 870 & n.11 (N.D. Tex. 2004) ("The starting point of this inquiry is the language of the [agreed] Protective Order[,]" and "[w]hen interpreting the terms of a court order, courts should consider the plain meaning of the language and the normal usage of the terms in question."); In re Cement and Concrete Antitrust Litig., 817 F.2d 1435, 1442-43 (9th Cir. 1987) (starting with the plain language of the class definition in

-10-

Judge Kay rejected respondents' interpretation and concluded that the temporal condition stated in paragraph one, "[p]rior to being permitted access to the detainee," is restricted to the Notification of Representation. Respondents' position would have required reading the first paragraph as if the plain language of the first sentence of that paragraph read: "Prior to being permitted access to the detainee, counsel must provide DoD with a Notification of Representation and evidence of his or her authority to represent the detainee"; or as if the plain language of the last sentence of the first paragraph read: "Additionally, prior to being permitted access to the detainee, counsel shall provide evidence of his or her authority to represent the detainee"; or as if paragraph one were structured as follows:

1. Prior to being permitted access to the detainee
   a. Counsel must provide DoD with a Notification . . . Additionally,
   b. Counsel shall provide evidence of his or her authority to represent the detainee.

---

reviewing a lower court's interpretation of an existing class definition), <u>vacated on other grounds</u>, 940 F.2d 1583 (9th Cir. 1991); <u>City of Hartford v. Chase</u>, 942 F.2d 130, 134 (2d Cir. 1991) ("Because the Confidentiality Order was part of a court-approved agreement, it must be construed according to general principles of contract law. . . . Thus, deference is to be paid to the plain meaning of the language . . . and the normal usage of the terms selected.") (citations and quotations omitted); <u>Wilder v. Bernstein</u>, 153 F.R.D. 524, 527 (S.D.N.Y. 1994) ("As is the case in interpreting contracts, a court must look to the plain meaning of the language used in the agreement when interpreting a consent decree.").

-11-

But paragraph one is not composed that way, and there is no warrant to read non-existent plain language into the existing plain language of the Revised Access Procedures. Thus, Magistrate Judge Kay concluded that while the Revised Access Procedures require Notification of Representation prior to the first visit with the detainee, they do not require evidence of authority to represent the detainee **prior** to the first counsel visit. Magistrate Judge Kay's conclusion on this point, based on the text's plain language, is well-supported in fact and law and is not clearly erroneous or contrary to law.

Magistrate Judge Kay's determination also conformed to the rule of construction that identical phrases are presumed to have identical meaning. Sullivan v. Stroop, 496 U.S. 478, 484 (1990) (referring to and applying the "normal rule of [textual] construction that identical words used in different parts of the same [text] are intended to have the same meaning") (citing cases). Magistrate Judge Kay concluded that the two identical phrases in the two adjacent paragraphs - - "evidence of his or her authority to represent the detainee" - - refer to a single standard to be made in a single showing. Relying on the "commonplace rule of statutory construction [] that the specific governs the general," he concluded that the detail in the second paragraph specifying **when** the required evidence must be provided simply modifies the bare announcement in the first paragraph that

-12-

such evidence would be required. Mem. Op. at 25, quoting <u>Ki Se Lee v. Ashcroft</u>, 368 F.3d 218, 223 (3d Cir. 2004) (internal quotations omitted). The plain language of the Revised Access Procedures affords no support for respondents' contention that the two identical phrases impose different, and tiered, standards of evidence. Magistrate Judge Kay's conclusion in this respect is not clearly erroneous or contrary to law.

Respondents turn to language used in other protective orders to argue that their interpretation is consistent with the intention of the parties who negotiated the Revised Access Procedures issued by Judge Green as part of the protective order in <u>In re Guantanamo Detainee Cases</u>. (Mot. for Recons. at 26-29.) Specifically, they point to the following precursor language:

1  Prior to being permitted access to the detainee, counsel must provide DoD with a *Notification of Representation*. This Notification must include the counsel's licensing information, business and email addresses and phone number, as well as the name of the detainee being represented by the counsel. Furthermore, the counsel must provide sufficient details regarding the circumstances of his/her retention to demonstrate the counsel's authority or standing to bring a habeas or other federal court action on the detainee's behalf.

2  After meeting with the detainee, counsel must provide DoD with an Acknowledgment of Representation. This document must be signed by the detainee and must specifically state that the detainee is being represented in habeas or other federal litigation by counsel named in the Acknowledgment. This document shall be provided by the DoD and shall be signed and submitted as soon as is practical.

-13-

(Access Procedures . . . ¶¶ III.C.1 and 2, appended at Tab 4 and at Tab 5, Ex. 1, to Mot. for Recons.)

Respondents' argument is unavailing in multiple respects. First, the history and context of text is of no consideration if the text affords a straightforward interpretation. See BedRoc Limited, LLC v. United States, 541 U.S. 176, 183 (2004) (stating that "inquiry begins with the statutory text and ends there as well if the text is unambiguous."); Exxon Mobil Corp. v. Allapattah Servs., Inc., 125 S. Ct. 2611, 2626 (2005) ("As we have repeatedly held, the authoritative statement is the statutory text, not the legislative history or any other extrinsic material."); Sec'y of Labor v. Western Fuels-Utah, Inc., 900 F.2d 318, 325 (D.C. Cir. 1990) (referring with approval to the "norm counseling courts to rely on the 'plain meaning' of [agency] regulations"). Second, the protective order in this case is not the product of a negotiated agreement between the parties to **this** action. Only the respondents, not the petitioner, in this case were privy to and involved in the negotiation of the Revised Access Procedures that were entered as part of Judge Green's protective order. Thus, to the extent that the terms of Judge Green's order were negotiated and principles of contract construction apply here, the intention of the parties in that case does not control an interpretation of this protective order. Third, the fact that particular language was

-14-

used in a prior order but not used in a subsequent order does not compel a conclusion that the precursor language better explains the meaning of the subsequent text than does the latter text itself. It shows only that the negotiating parties knew of the precursor language and did not use it in the subsequent text. Finally, respondents' assertion that the Revised Access Procedures were designed with next-friend petitions in mind (Mot. for Recons. at 27-29), is undercut by the fact that the Revised Access Procedures do not even mention the next-friend device. Whatever the backdrop and intentions of the parties negotiating the Revised Access Procedures may have been, it is the express language of the resulting order that is given effect by a reviewing court.[2] Magistrate Judge Kay did not clearly err or act contrary to law when he refused to read into the protective order terms that had been revised or left out, regardless of whether they had been in the contemplation of one or more of the parties. Respondents' interpretation of the Revised Access Procedures incorporated into the protective order in this case cannot prevail in light of the order's plain language and the law.

Even if their interpretation could be credited, respondents' position in this case is untenable for other reasons. First, counsel here have in fact provided "evidence of his or her

---

[2] See note 1, supra.

-15-

authority to represent the detainee" prior to a visit to the detainee.  Here, a sworn statement provides evidence that Adem was actively seeking a lawyer to represent him.  (Al-Rawi Decl.)  Under the circumstances, where the detainee's ability to freely and timely communicate with the outside world is severely compromised, counsel have provided prima facie evidence of authority to represent Adem.  Second, respondents' counsel's demands of Fogler and Clingman are not consistent with respondents' own stated current interpretation of the protective order.  On review here, respondents argue that access is conditioned on "initial proof of authority to represent a detainee" plus a "requirement that **direct authorization** be submitted 'as soon as practical [sic]' thereafter (though in no event more than 10 days after a second visit, under the final version of the [Revised] Access Procedures)."  (Mot. for Recons. at 28-29 (emphasis added).)  Counsel for respondents, however, repeatedly demanded "evidence that petitioner Adem has **authorized you directly** to initiate this litigation," **prior** to permitting counsel to visit their client in Guantanamo.  (Fogler Decl., Exs. D & G (emphasis added).)  The "initial proof" evidentiary demand made to Fogler and Clingman as a threshold requirement of scheduling a visit to their client is indistinguishable from the evidence respondents assert is required under paragraph two, after the second counsel visit.  Thus, respondents' demands for

-16-

proof have exceeded what they argue the correct interpretation of the protective order requires.

Aside from the fact that the plain language of the protective order does not require evidence that the petitioner directly authorized the particular lawyer to file a petition before the lawyer has even met the detainee, any such requirement prior to counsel meeting a Guantanamo detainee would unjustly pose a conundrum for petitioner. That Adem has requested a lawyer to represent him is not disputed. Requiring a Guantanamo detainee to identify a specific lawyer from among all the volunteer lawyers - - most of whom are unknown to the detainee before a meeting - - is a meaningless exercise. It would be unconscionable to tether a detainee's access to counsel to such an unworkable prerequisite.

Respondents' argument that the magistrate judge lacks authority to issue the Order dated March 14, 2006, was not before the magistrate judge, was not briefed, litigated or considered below, and is not properly the subject of a motion for reconsideration. The premise of their argument - - that this court is without jurisdiction to entertain any habeas corpus petition filed by a Guantanamo detainee, including one already pending when the Detainee Treatment Act was signed into law on December 30, 2005 - - is a disputed issue that was litigated and is currently under consideration by the United States Court of

-17-

Appeals for the District of Columbia Circuit. See Kalid v. Bush, 355 F. Supp. 2d 311 (D.D.C. 2005), appeal docketed sub nom. Boumediene v. Bush, Nos. 05-5062, 05-5063 (D.C. Cir. Mar. 10, 2005). Until that dispute is resolved, respondents' argument is premature.

Respondents concede that the protective order remains in effect. Mem. Op. at 21. A court has inherent power to enforce its own lawful orders. Broderick v. Donaldson, 437 F.3d 1226, 1234 (D.C. Cir. 2006). Adem has a right to counsel under the rule in Al Odah v. United States, 346 F. Supp. 2d 1, 8 (D.D.C. 2004). He has expressly elected to exercise that right. The protective order establishes the procedures to follow in facilitating a detainee's access to counsel given the unusual circumstances of detention at Guantanamo. Enforcing the terms of the protective order in this case does not pose a danger of exceeding the court's jurisdiction, even if it is ultimately determined that this court does not have jurisdiction to determine the merits of a petition for habeas corpus relief.

Respondents' request for a stay pending resolution of the merits of their motion for relief upon reconsideration is rendered moot by this Memorandum Opinion and Order.

CONCLUSION AND ORDER

Because the pending petition was filed as a direct petition, respondents' motion for an order directing petitioner to show

-18-

cause why the case should not be dismissed for lack of proper next-friend standing will be denied. Because Magistrate Judge Kay did not clearly err or act contrary to law in interpreting the June 3, 2005 protective order entered in this case, and because a court has inherent authority to enforce its own orders, the relief respondents seek in their motion for reconsideration will be denied. Accordingly, it is hereby

ORDERED that respondents' motion for an order directing petitioner to show cause [27] be, and hereby is, DENIED. It is further

ORDERED that respondents' motion for relief based on reconsideration [38] be, and hereby is, DENIED. It is further

ORDERED that respondents' motion for a stay pending resolution of the motion for reconsideration on the merits [39] be, and hereby is, DENIED as moot.

SIGNED this 28th day of April, 2006.

/s/
RICHARD W. ROBERTS
United States District Judge