IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ABDUR RAZAKAH, *et al.*, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-CV-2370 (EGS) |
| | ) | |
| GEORGE W. BUSH, | ) | |
| President of the United States, | ) | |
| *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**RESPONDENTS' MEMORANDUM IN OPPOSITION TO
PETITIONERS' MOTION FOR AN ORDER TO SHOW CAUSE
WHY RESPONDENTS SHOULD NOT BE HELD IN CONTEMPT**

Petitioners' motion for an order to show cause why respondents should not be held in

contempt of the Protective Order for not scheduling counsel's requested visit with detainees

Abdur Razakah and Ahmad Doe should be denied.  First of all, the Detainee Treatment Act of

2005 withdraws jurisdiction from the Court to grant the relief requested by petitioners.  Second,

notwithstanding this withdrawal of the Court's jurisdiction, respondents are not and were never

in contempt of the Protective Order in this case.  The Protective Order does not "clear[ly] and

unambiguous[ly]," see Armstrong v. Executive Office of the President, 1 F.3d 1274, 1289 (D.C.

Cir. 1993), require respondents to permit a visit by counsel with any particular petitioner in this

case.  While the Revised Procedures for Counsel Access to Detainees annexed to the Protective

Order operate under the assumption of counsel visits occurring in that they set certain terms,

conditions and limitations applicable to any such visits, they do not order respondents to provide

a visit on demand of counsel in the first place.  Also, another provision of the Protective Order

confirms that respondents acted appropriately in declining to schedule a visit with detainees on whose behalf the case was brought where, as here, counsel has not yet provided appropriate evidence of his or her authority to represent the detainees. Accordingly, there is no basis for contempt in this matter, and petitioners' motion should be denied.

## BACKGROUND

On December 12, 2005, counsel for petitioners filed a petition for writ of habeas corpus on behalf of detainees Abdur Razakah and Ahmad Doe, submitted through a putative next friend, detainee Usama Hasan Abu Kabir. See Petition (dkt. no. 1). On January 12, 2006, petitioners filed a motion to expedite the entry of a Protective Order, similar to those entered in other Guantanamo detainee cases pending before other Judges of this Court, in this case. See Pets' Mot. to Expedite Entry of the Protective Order (dkt. no. 5). On March 17, 2006, the Court issued a Minute Order, without opinion, that granted petitioners' motion and applied the Protective Order and related, supplementary orders to this case.[1] See Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al., 344 F. Supp. 2d 174 (D.D.C. Nov. 8, 2004), and related orders. The first two paragraphs of the Protective Order set forth its premises, function, and scope:

---

[1] Respondents opposed entry of the Protective Order because the Detainee Treatment Act of 2005 withdrew the Court's jurisdiction to grant the relief requested by petitioners, and also because petitioners had not yet demonstrated why the petition in this case, not directly authorized by the detainees at Guantanamo Bay for whom habeas relief is sought, but instead brought by another detainee claiming to act as their "next friend," should not be dismissed for lack of proper next friend standing. See Resps' Opp. to Mot. to Expedite Entry of the Protective Order (dkt. No. 7).

      1.      This case likely involves classified national security information or documents, the storage, handling and control of which require special security precautions, and access to which requires a security clearance and a "need to know." This case may also involve other protected information or documents, the storage, handling and control of which may require special precautions in order to protect the security of United States government personnel and facilities, and other significant government interests.

      2.      The purpose of this Protective Order is to establish the procedures that must be followed by all petitioners' counsel, their respective petitioner(s), all other counsel involved in this case, translators for the parties, and all other individuals who receive access to classified national security information or documents, or other protected information or documents, in connection with this case, including the privilege team as defined in Exhibit A.

Id., ¶¶ 1, 2.

      To serve this overarching function of "prevent[ing] the unauthorized disclosure or dissemination of classified national security information and other protected information," id. at 1, the Protective Order further provides that "*Petitioners' counsel* are bound by the terms and conditions set forth in the 'Revised Procedures for Counsel Access to Detainees At the U.S. Naval Base in Guantanamo Bay, Cuba,' and the procedures for handling mail and documents brought into and out of counsel meetings, attached hereto as Exhibit A." Id., ¶ 6 (emphasis added). Moreover, "[t]his Protective Order specifically incorporates by reference all terms and conditions established in the procedures contained in Exhibit A *to the extent they place limitations on petitioners' counsel in their access to and interaction with petitioners or handling of information*." Id. (emphasis added).

      The Revised Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantanamo Bay, Cuba, annexed to the Protective Order as Exhibit A, in turn, set certain terms,

conditions, and limitations for habeas counsel's access to properly represented detainees and sets out procedures and requirements for the handling of information obtained from and delivered to detainees.  For example, it requires that visiting counsel obtain a security clearance, see id., Ex. A, § III.A, and must sign an affirmation acknowledging his or her agreement to comply with the counsel access procedures.  See id., Ex. A, § III.B.  Further, it provides that "[p]rior to being permitted access to the detainee," counsel must "provide evidence of his or her authority to represent the detainee."  Id., Ex. A, § III.C.1.  In other Guantanamo detainee cases, this evidence has typically taken the form of letters from detainees directly authorizing a challenge to their detention, or affidavits and authorizations of "next friends" who have filed petitions on behalf of detainees.  In a proper "next friend" case, because the detainee "remains the real party in interest," see Whitmore v. Arkansas, 495 U.S. 149, 163 (1990), the access procedures further require a second, subsequent type of authorization, directly from the detainee, once counsel in a proper next friend case is provided access to the detainee.[2]  See Protective Order, Ex. A, § III.C.2. (counsel must "provide evidence of his or her authority to represent the detainee as soon as practicable and in any event no later than ten (10) days after the conclusion of a second visit with a detainee.").

After receiving the appropriate security clearances, counsel for petitioners requested a meeting with detainees Abdur Razakah and Ahmad Doe at Guantanamo Bay.  See Declaration of J. Wells Dixon, Ex. D.  Counsel for respondents informed counsel for petitioners that, pursuant

---

[2]  This two-layer requirement regarding counsel's authority to bring and then maintain the lawsuit was appropriately established in light of the fact that the Guantanamo habeas cases pending at the time the access procedures were negotiated and established were uniformly "next friend" cases.

to the Protective Order, the petition in this case had yet to be properly authorized — either through direct authorization by detainees Abdur Razakah and Ahmad Doe, or by establishing proper next friend standing of detainee Usama Hasan Abu Kabir under <u>Whitmore v. Arkansas</u>, 495 U.S. 149 (1990). <u>See id.</u> Thus, pursuant to the Protective Order, respondents have declined to permit counsel to visit petitioners at Guantanamo Bay until sufficient evidence of counsel's authority to represent petitioners is provided.

On April 20, 2006, counsel for petitioners filed a motion for order to show cause why respondents should not be held in contempt of the Protective Order because respondents will not permit counsel to visit Guantanamo Bay.

## <u>ARGUMENT</u>

**I.  The Detainee Treatment Act of 2005 Withdraws District Court Jurisdiction to Grant the Relief Requested by Petitioners.**

On December 30, 2005, the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2680 ("the Act"), became law.  The Act, among other things, amends 28 U.S.C. § 2241 to remove court jurisdiction to hear or consider applications for writs of habeas corpus and other actions brought in this Court by or on behalf of aliens detained at Guantanamo Bay, Cuba. Section 1005(e)(1) of the Act amends 28 U.S.C. § 2241 to provide that "no court, justice, or judge shall have jurisdiction" to consider either (1) habeas petitions filed by aliens detained by the Department of Defense at Guantanamo, or (2) any other action relating to any aspect of the detention of such aliens.  In addition, the Act creates an exclusive review mechanism in the D.C. Circuit to address the validity of the detention of such aliens held as enemy combatants; section 1005(e)(2) of the Act states that the D.C. Circuit "shall have exclusive jurisdiction to

determine the validity of any final decision of a Combatant Status Review Tribunal that an alien

is properly detained as an enemy combatant," and it further specifies the scope and intensiveness

of that review.  Section 1005(e)(1), which eliminates the jurisdiction of the courts to consider

habeas and other actions brought by Guantanamo detainees, was made immediately effective

without reservation for pending cases, and § 1005(e)(2), which establishes the exclusive review

mechanism in the D.C. Circuit, was made expressly applicable to pending cases.  Id. § 1005(h).

In light of the statutory withdrawal of this Court's jurisdiction, and the creation of an exclusive

review mechanism in the D.C. Circuit, the Court has no jurisdictional basis to order the relief

requested by petitioners.

The effect of the Act was addressed in supplemental briefing in the Guantanamo detainee

appeals pending before the D.C. Circuit,[3] and our understanding is that it is the sense of the Court

that it wishes to await anticipated guidance from the D.C. Circuit regarding the effect of the Act

before deciding any pending motions.[4]  In light of this and given the new, statutory withdrawal of

---

[3]  Oral argument before the D.C. Circuit was held on March 22, 2006.

[4]  Petitioners' assertion that, by raising a next friend objection without moving to dismiss the petition, "[r]espondents were attempting to circumvent the Court's clear admonition against substantive motion practice while the informal stay was pending and its equally clear directive that the informal stay would not operate to deprive detainees of access to counsel," Pets' Mot. at 2, is false.  On January 13, 2006, after the Act became law, Terry Henry, counsel for respondents, and Barbara Olshansky, representative counsel for petitioners in the Guantanamo cases, were informed by the Administrative Assistant to the Chief Judge that the sense of the Court to await guidance from the D.C. Circuit regarding the effect of the Act before deciding motions, applied with respect to motions seeking entry of the Protective Order, though the Court might reconsider its overall approach if the D.C. Circuit guidance tarried too long.  Respondents' objections and arguments in response to petitioners' motion for entry of the Protective Order were consistent with the sense of the Court expressed to respondents' counsel and merely attempted to explain why this Court lacks jurisdiction to enter the Protective Order and grant other relief in this case.

Further, even though the Protective Order was subsequently entered in this case, the

- 6 -

the Court's jurisdiction, at a minimum a stay of all proceedings in this case, including with respect to petitioners' request for relief, is appropriate pending the resolution of the effect of the Act.[5] Indeed, because the Act vests "exclusive" jurisdiction in the D.C. Circuit "to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant," id. § 1005(e)(1), it would be inappropriate for the Court to order relief in the interim that might infringe upon the Court of Appeals' exclusive jurisdiction. See Telecommunications Research and Action Center v. FCC, 750 F.2d 70, 75, 78-79 (D.C. Cir. 1984) (request for relief in district court that might affect Court of Appeals' future, exclusive jurisdiction is subject to the exclusive review of the Court of Appeals).[6]

---

Court never indicated that all detainees would be entitled to visits with their counsel regardless of whether the requirements of the Protective Order are satisfied.  In any event, petitioners possess no separate right of access to counsel that warrants a counsel visit to Guantanamo Bay notwithstanding the jurisdictional infirmities present in this case.  See Pets' Mot. at 9.  In Al Odah v United States, 346 F. Supp. 2d 1 (D.D.C. 2004), Judge Kollar-Kotelly explained that, despite there being no absolute right to counsel under the habeas statute, the Court, under its discretionary, statutory authority in habeas cases — authority now withdrawn with the Act's withdrawal of district court habeas jurisdiction — may appoint counsel to represent Guantanamo petitioners properly before the Court, if warranted.  See id. at 4-5, 7-8.  Thus, contrary to petitioners' suggestion, notwithstanding the Act's withdrawal of jurisdiction over this case, Al Odah does not compel the relief requested by petitioners.

[5]  In this vein, four other Judges of the Court have recently entered orders in Guantanamo detainee habeas cases pending before them denying without prejudice or holding in abeyance all pending motions and staying "all action" in the cases pending resolution of the effect of the Act. See January 11, 2006 Order in Gherebi v. Bush, No. 04-CV-1164 (RBW), et al.; January 27, 2006 Order in Begg v. Bush, No. 04-CV-1137 (RMC), et al.; March 16, 2006 Order in Anam v. Bush, No. 04-CV-1194 (HHK), et al.; March 31, 2006 Order in Ahmed Doe v. Bush, No. 05-CV-1458 (ESH), et al.

[6]  Respondents previously intended to file a motion to dismiss this case based upon the Act's withdrawal of the Court's jurisdiction, see Notice of Supplemental Authority (dkt. no. 3), but refrained from doing so when they were informed that the sense of the Court was to await anticipated guidance from the D.C. Circuit regarding the effect of the Act before proceeding further in the Guantanamo habeas cases.  During this interim period, respondents have permitted

II.    **Notwithstanding the Act's Withdrawal of the Court's Jurisdiction to Grant the Relief Requested By Petitioners, Respondents Should Not Be Held in Contempt of the Protective Order.**

Courts have inherent power to enforce compliance with their lawful orders through civil contempt.  See Armstrong, 1 F.3d at 1289.  For more than a century, however, the law has been well settled that civil contempt "is a severe remedy, and should not be resorted to where there is fair ground of doubt as to the wrongfulness of the defendant's conduct."  California Paving Co. v. Molitor, 113 U.S. 609, 618 (1885).  "In light of the [contempt] remedy's extraordinary nature, courts rightly impose it with caution."  Joshi v. Professional Health Services, Inc., 817 F.2d 877, 879 n.2 (D.C. Cir. 1987).  As the Supreme Court has held, "the very amplitude of the power is a warning to use it with discretion, and a command never to exert it where it is not necessary or proper."  Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 451 (1911).  Indeed, in order to prevent abuses of the contempt power and to protect those on whom the potent authority may be visited, Congress has long regulated the exercise of the contempt power by statute.  See 18 U.S.C. § 401 (providing that a court of the United States shall have the power to punish only certain acts as contempt, including "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command"); In re McConnell, 370 U.S. 230, 233-34 (1962); Nye v. United States, 313 U.S. 33, 44-48 (1941); In re Brown, 454 F.2d 999, 1002 (D.C. Cir. 1971).

---

counsel visits and other privileged access to properly represented detainees in cases where the Protective Order had already been entered, and its requirements satisfied, pending a decision from the D.C. Circuit.  Once the Act's withdrawal of the Court's jurisdiction became effective, however, respondents have consistently opposed entry of the Protective Order in cases where it had not already been entered.  In any event, respondents' actions in other Guantanamo habeas cases cannot be construed as a waiver or concession of jurisdiction that permits a counsel visit to Guantanamo Bay in this case.  See Floyd v. District of Columbia, 129 F.3d 152, 155 (D.C. Cir. 1997) (noting that "jurisdiction cannot be waived").

Accordingly, civil "contempt will lie only if the putative contemnor has violated an order that is clear and unambiguous . . . and the violation must be proved by 'clear and convincing' evidence." Armstrong, 1 F.3d at 1289 (citations omitted); see SEC v. Showalter, 227 F. Supp. 2d 110, 120-21 (D.D.C. 2002) (Urbina, J.). As the Supreme Court has explained:

> The judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one. Congress responded to that danger by requiring that a federal court frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid.

International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n, 389 U.S. 64, 76 (1967) (discussing Fed. R. Civ. P. 65(d) regarding injunctions).

Civil contempt is a remedial device used to achieve compliance with an order of the court that is being violated, see Showalter, 227 F. Supp. 2d at 120-21, and contempt sanctions can be avoided by prompt compliance with the order, see Petties v. District of Columbia, 888 F. Supp. 165, 169 (D.D.C. 1995) (Friedman, J.). Defenses to civil contempt can include impossibility of compliance with the order. See, e.g., SEC v. Ormont Drug & Chem. Co., 739 F.2d 654, 656-57 (D.C. Cir. 1984). Further, the Supreme Court has suggested that civil contempt proceedings may be inappropriate in cases involving out-of-court disobedience to complex injunctions. See Int'l Union, United Mine Workers v. Bagwell, 512 U.S. 821, 833-34 (1994).[7]

---

[7]    In addition, courts have held that civil contempt fines are not available against the United States and its officials under the doctrine of sovereign immunity. See United States v. Horn, 29 F.3d 754, 763, 765 n.13, 767 (1st Cir. 1994) (citing cases); U.S. v. Waksberg, 881 F. Supp. 36, 39-41 (D.D.C. 1995) (June Green, J.), vacated and remanded on other grounds,112 F.3d 1225 (D.C. Cir. 1997). But see Am. Rivers v. U.S. Army Corps of Eng'rs, 274 F. Supp. 2d 62, 69 (D.D.C. 2003) (Kessler, J.) (rejecting assertion of sovereign immunity with respect to coercive, as opposed to compensatory, contempt fines).

Notwithstanding the Act's withdrawal of district court jurisdiction in this case, respondents are not now and have not been in contempt of the Protective Order or its accompanying counsel access procedures in this case. First, as explained <u>supra</u>, the primary purpose of the access procedures — which are subsidiary to a Protective Order preventing unauthorized disclosure of classified or protected information, and which are incorporated into the Protective Order "to the extent they place limitations on petitioners' counsel in their access to and interaction with petitioners or handling of information," Protective Order, ¶ 6 — is to set certain terms, conditions and limitations for habeas counsel's access to properly represented detainees. Whether some other authority aside from the access procedures would entitle counsel to visit a properly represented petitioner at Guantanamo, the access procedures neither "clearly" nor "unambiguously," <u>see</u> <u>Armstrong</u>, 1 F.3d at 1289, require respondents to permit a visit by counsel with any particular petitioner in this case so as to support a finding of contempt. While the access procedures certainly operate with the assumption that counsel visits will occur in that they set the terms and procedures applicable to any such visits, they do not themselves order respondents to provide such visits on demand of counsel in the first place.[8] The access procedures do not order or direct a counsel visit, and petitioners cannot show by "clear and

---

[8] The relationship between counsel visits and the access procedures in this case would be analogous to other cases in which an omnibus protective order is entered at the outset of the case governing the use and handling of information that will be exchanged between parties in discovery. The omnibus protective order may set the terms of how information obtained in discovery is to be treated, shared, or stored, for example, but a party's entitlement to any particular requested discovery is settled through court process (<u>e.g.</u>, a motion to compel) and not through the protective order. Thus, an omnibus protective order operates with the assumption that discovery will occur, but typically does not by its own terms obligate the parties to produce any particular information on pain of contempt.

convincing evidence" the violation of a "clear and unambiguous" order in that regard. <u>See</u> <u>Armstrong</u>, 1 F.3d at 1289.

Second, respondents are acting appropriately and consistently with the access procedures in deferring the scheduling of a counsel visit to Guantanamo Bay until counsel provide respondents with sufficient evidence of their authority to represent Abdur Razakah and Ahmad Doe.  As explained <u>supra</u>, the access procedures require two types of authorizations of representation from counsel.  Initially, "[p]rior to being permitted access to the detainee," counsel must "provide evidence of his or her authority to represent the detainee." <u>See</u> Protective Order, Ex. A, § III.C.1.  In other Guantanamo detainee cases, this evidence has typically taken the form of letters from detainees directly authorizing a challenge to their detention, or affidavits and authorizations of proper "next friends" who have filed petitions on behalf of detainees, demonstrating that the requirements established by the Supreme Court for next friend standing are met. <u>See</u> <u>infra.</u>  Assuming such evidence is produced, and subject to other requirements of the Protective Order and access procedures, in next friend cases, the access procedures further require a second type of authorization, directly from the detainee, once counsel is provided access to the detainee. <u>See</u> <u>id.</u> § III.C.2. (counsel must "provide evidence of his or her authority to represent the detainee as soon as practicable and in any event no later than ten (10) days after the conclusion of a second visit with a detainee.").  In this case, counsel for petitioners have yet to provide respondents with appropriate evidence of their authority to represent petitioners. Therefore, respondents acted consistently with the Protective Order in declining to permit counsel to visit petitioners until such evidence of authority, a prerequisite to being granted access to detainees at Guantanamo Bay, is provided to the government.

Further, given that this case was filed through a putative next friend, detainee Usama Hasan Abu Kabir, and not directly authorized by detainees Abdur Razakah and Ahmad Doe, respondents are challenging the standing of the so-called "next friend" in this case, making the case jurisdictionally improper.[9]  See Resps' Opp. to Pets' Mot. for Expedited Entry of the Protective Order.  Next friend petitioner Usama Hasan Abu Kabir should be required to establish proper next friend status and justify the exercise of the Court's jurisdiction over this action.  See Whitmore v. Arkansas, 495 U.S. 149, 163 (1990) ("'[N]ext friend' standing is by no means granted automatically to whomever seeks to pursue an action on behalf of another.").  To do so, he must satisfy the "two firmly rooted prerequisites" articulated by the Supreme Court in Whitmore: (1) he must demonstrate that the detainees on whose behalf he claims to file a petition for writ of habeas corpus cannot challenge the legality of their detention themselves; and (2) he must have a significant relationship with these detainees in order to demonstrate that he is truly dedicated to their best interests.  Id. at 163-64.  Petitioners have not yet established that Usama Hasan Abu Kabir satisfies these requirements.  See Resps' Opp. to Pets' Mot. for Expedited Entry of the Protective Order.  If petitioners cannot demonstrate that Usama Hasan Abu Kabir meets the Whitmore requirements for next friend standing, the Court cannot exercise jurisdiction

---

[9]  Petitioners believe that the Court "implicitly rejected" respondents' challenge to next friend standing in this case when it granted petitioners' motion for entry of the Protective Order. See Pets' Mot. at 4.  Given the serious jurisdictional issues surrounding this case, however, it is difficult to accept that the Court's Minute Order, which simply entered the Protective Order in this case and did not address the arguments raised in respondents' memorandum in opposition, operates as a substantive rejection of respondents' jurisdictional objections.  In any event, as explained supra, now that the Protective Order has been entered in this case, respondents are acting appropriately and consistently with the access procedures in deferring the scheduling of a counsel visit to Guantanamo Bay until counsel provide respondents with sufficient evidence of their authority to represent Abdur Razakah and Ahmad Doe.

over the petition, and this case must be dismissed. Thus, because respondents dispute whether this case was authorized by a legitimate next friend, respondents are acting consistent with the access procedures in deferring scheduling of a counsel visit pending appropriate "evidence of . . . authority to represent the detainee," i.e., authorization by a next friend who satisfies the requirements of Whitmore v. Arkansas, 495 U.S. at 163-64.

In support of their position, petitioners rely on Magistrate Judge Kay's March 21, 2006 Memorandum Opinion and Order, and Judge Roberts's April 28, 2006 Memorandum Opinion and Order in Adem v. Bush, No. 05-CV-0723 (RWR). See Pets' Mot. at 6-8; Pets' Notice of Supplemental Authority (dkt. no. 19). Not only are these opinions not binding on this Court, but the interpretation of the Protective Order set forth in these opinions raises significant jurisdictional issues – issues relating to the effect of the Detainee Treatment Act of 2005 as well as grave jurisdictional issues independent of the Act. Respondents addressed these serious questions in Respondents' Motion for Stay and Reconsideration of Magistrate Judge's Order and Opinion Docketed on March 21, 2006, which is attached and is incorporated herein. See Adem v. Bush, No. 05-CV-0723 (RWR) (dkt. no. 38) (attached as Exhibit A). Respondents are presently considering their options regarding appeal or mandamus of the Court's decision in Adem. Given the serious jurisdictional questions raised in this decision, which remain unresolved, and for the reasons set forth in Exhibit A attached hereto and incorporated herein, this Court should not apply the interpretation of the Protective Order set forth in Adem to this case.[10]

---

[10] Similarly, to the extent that Judge Friedman's April 13, 2006 Order in Al Salami v. Bush, No. 05-CV-2452 (PLF) (dkt. no. 12), relies on the Court's reasoning in Adem, it should not be persuasive to this Court. See Pets' Mot. at 6-7 (citing April 13, 2006 Order in Al Salami

In short, notwithstanding the Act's withdrawal of the Court's jurisdiction to grant the relief that petitioners request, petitioners have failed to present any "clear and convincing evidence" of the violation of a "clear and unambiguous" order and, therefore, contempt would not be appropriate in any event. Even if petitioners disagreed with respect to the insufficiency of the evidence regarding the standing of the next friend, contempt "is a severe remedy, and should not be resorted to where there is fair ground of doubt as to the wrongfulness of the defendant's conduct," California Paving Co., 113 U.S. at 618, and, at the very least, such "fair ground of doubt" would exist in such a situation.[11]  Petitioners' counsel is entitled to argue against respondents on these points, but counsel should not be entitled to harangue and harass respondents with threats of contempt and sanctions, a severe and extraordinary remedy to be imposed with the greatest of caution, see Joshi, 817 F.2d at 879.  There is no basis or grounds for a finding of contempt in this matter, and petitioners' motion should be denied.[12]

_____

v. Bush).

[11]  Although petitioners accuse respondents of not acting in good faith by engaging in the "obstructionist" and "particularly disingenuous tactic" of challenging next friend standing in the Guantanamo habeas cases, Pets' Mot. at 9-10, it is difficult to see how respondents' position on the next-friend standing issue could be seen as so meritless as to warrant contempt when Judges of this Court have raised the issue *sua sponte* in other cases presenting similar circumstances. See, e.g., Ahmed v. Bush, No. 05-CV-0665 (RWR) (Order dated May 24, 2005) (dkt. no. 12); Hamlily v. Bush, No. 05-CV-0763 (JDB) (Order dated Oct. 3, 2005) (dkt. no. 16); Othman v. Bush, No. 05-CV-2088 (RWR) (Order dated November 1, 2005) (dkt. no. 2).  See also Ahmed Doe v. Bush, No. 05-CV-1458 (ESH), et al. (Order dated November 4, 2005) (dkt. no. 10) (Oberdorfer, J.) (granting respondents' motion for order to show cause why cases should not be dismissed for lack of proper next friend standing).

[12]  Petitioners' argument that counsel should be permitted to visit Abdur Razakah and Ahmad Doe because respondents are allegedly "hiding" their purported "expected eligibility for release" from Guantanamo Bay is of no moment.  See Pets' Mot. at 10.  Unlike the petitioners in Qassim v. Bush, No. 05-CV-0497 (JR), who were determined by the Combatant Status Review Tribunals to no longer be enemy combatants, the petitioners in this case were determined to be

## CONCLUSION

For the reasons stated, petitioners' motion for an order to show cause why respondents should not be held in contempt of the Protective Order for not scheduling counsel's requested visit with detainees Abdur Razakah and Ahmad Doe should be denied.

Dated: May 4, 2006                          Respectfully submitted,

                                            PETER D. KEISLER
                                            Assistant Attorney General

                                            DOUGLAS N. LETTER
                                            Terrorism Litigation Counsel

                                            ____/s/ Preeya M. Noronha_____
                                            JOSEPH H. HUNT (D.C. Bar No. 431134)
                                            VINCENT M. GARVEY (D.C. Bar No. 127191)
                                            TERRY M. HENRY
                                            JAMES J. SCHWARTZ
                                            PREEYA M. NORONHA
                                            ROBERT J. KATERBERG
                                            NICHOLAS J. PATTERSON
                                            ANDREW I. WARDEN
                                            EDWARD H. WHITE
                                            MARC A. PEREZ
                                            Attorneys
                                            United States Department of Justice
                                            Civil Division, Federal Programs Branch
                                            20 Massachusetts Ave., N.W.  Room 7144

---

affiliated with forces engaged in hostilities against the United States and its coalition partners and are therefore classified as enemy combatants lawfully subject to detention.  Any subsequent determination of whether it is in the interests of the United States to transfer or continue to detain enemy combatants, such as petitioners, lawfully subject to detention, is based on a complex weighing and balancing of factors and is an exercise of discretion by the Military that is not justiciable.  See Mem. Implementing Admin. Review of the Detention of Enemy Combatants (Sept. 14, 2004) (available at <<http://www.defenselink.mil/news/Sep2004/d20040914adminreview.pdf>>).  See also Dist. No. 1, Pacific Coast Dist., Marine Engs. Beneficial Ass'n v. Maritime Admin., 215 F.3d 37, 42 (D.C. Cir. 2000) (finding that Executive's "judgments on questions of foreign policy and national interest . . . are not subjects fit for judicial involvement").

- 15 -

Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents