IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————— x
                                                  :
ABDUR RAZAKAH, *et al.*,                         :
                                                  :
                    Petitioners,                  :
                                                  :
          v.                                      :    Civil Action No. 05-cv-02370 (EGS)
                                                  :
GEORGE W. BUSH, *et al.*,                        :
                                                  :
                    Respondents.                  :
                                                  :
———————————————————— x


**PETITIONERS' REPLY MEMORANDUM IN FURTHER
SUPPORT OF THEIR MOTION FOR AN ORDER TO SHOW CAUSE
<u>WHY RESPONDENTS SHOULD NOT BE HELD IN CONTEMPT</u>**

Petitioners Abdur Razakah and Ahmad Doe, by and through their undersigned counsel, respectfully submit this reply memorandum in further support of their motion for an order to show cause why Respondents should not be held in contempt of the Amended Protective Order entered by the Court on March 17, 2006.[1]

## Introduction

Respondents' opposition brief is notable in that it does not deny that Petitioners have been cleared for release from Guantánamo despite their initial "enemy combatant" designation. Indeed, since Petitioners filed their contempt motion, undersigned counsel have received an increasing number of reports that Respondents cleared Petitioners for release from Guantánamo some time ago but continue to detain them indefinitely until they can be transferred to a foreign country where they may be subject to further imprisonment.[2] At this stage, all we are requesting is to meet with our clients so that we can better understand their situation and assist in obtaining their release. Under these circumstances, Respondents' long campaign of delay is particularly illegitimate and egregious. It appears that by their continuing refusal to permit Petitioners to meet with their counsel, Respondents seek to avoid judicial scrutiny until

---

[1] We use the same abbreviations here as in Petitioners' opening brief, including "DTA" to refer to the Detainee Treatment Act of 2005. We cite Petitioners' opening brief as "Pet'rs' Br. at ___," and Respondents' opposition brief as "Resp'ts' Br. at ___."

[2] The United States government transferred the five Uighur petitioners in *Mamet v. Bush*, No. 05-cv-1886 (EGS) (D.D.C.), and *Qassim v. Bush*, No. 05-cv-5477 (D.C. Cir.), to Albania on Friday, May 5, 2006 – on the eve of oral argument before the Court of Appeals in *Qassim* – without prior notice to their counsel, this Court or the Court of Appeals. Respondents filed a "notice of transfer" with this Court on the evening of May 5th, after these men had already arrived in Albania. These men are now confined to a locked and guarded refugee center in Tirana, Albania, despite sworn representations by United States government officials to this Court and the Court of Appeals that as applicants for refugee status they would be free to leave this facility and travel within Albania. Those officials also indicated that these men would not be returned to the custody of the communist Chinese government where they would likely be imprisoned, tortured or killed on the basis of their religious and ethnic identity. However, on Monday, May 8, 2006, China formally requested extradition of these men from Albania. At this time, it is unclear whether that request will be granted.

they are able to remove Petitioners from this Court's jurisdiction without ever disclosing that these men – who have been held virtually *incommunicado*, without charge, and without access to counsel for several years – are wholly innocent.[3]

Far from offering any persuasive reason why they should not be held in contempt, Respondents offer only recycled – and consistently rejected – claims that this Court lacks jurisdiction under the DTA to grant the relief requested by Petitioners and that the Petition has not been properly authorized. They also claim that the Amended Protective Order does not otherwise require them to permit Petitioners access to their counsel. Respondents are not only wrong, but their persistent claims illustrate their open defiance of prior rulings by this Court and other judges in this District. We ask the Court to hold Respondents in contempt in order to put an end to their obstructionist tactics in this case and deter future efforts to deny Petitioners access to their counsel.

## **Argument**

Respondents first argue that this Court has no jurisdiction under the DTA to order the relief requested by Petitioners. *See* Resp'ts' Br. at 6. They also argue that it would be "inappropriate" for the Court to order any relief while challenges to the DTA are pending in the Court of Appeals because such relief might infringe on the Court of Appeals' exclusive jurisdiction under the DTA. *Id.* at 7. These claims are meritless and should be summarily rejected.

---

[3] Respondents' conduct is particularly egregious in the case of Petitioner Ahmad Doe, who was a refugee in Kabul, Afghanistan before he was captured and sold to the United States military for a bounty, and who is now essentially an invalid. We are informed that his leg was amputated by military officials at Guantánamo, and that he may not be receiving adequate medical treatment at the detainee hospital.

As set forth in Petitioners' opening brief, this Court has already considered – and rejected – Respondents' argument that it lacked jurisdiction under the DTA to enter the Amended Protective Order. *See* Pet'rs' Br. at 1-2.[4]  Many other courts have similarly rejected Respondents' DTA arguments. *See id.* at 2 n.2 (citing cases).  In particular, as Judge Friedman recently held in *Al Salami v. Bush*: "Central to the Protective Orders are their provisions for access to counsel.  Detainees' right to meet with counsel under the Protective Order is independent of the (still-unresolved) question of the Court's jurisdiction to rule on their *habeas* petitions."  Order at 1, *Al Salami v. Bush*, No. 05-cv-02452 (PLF) (D.D.C. Apr. 13, 2006) (entering the Amended Protective Order over Respondents' jurisdictional challenges) (Dixon Decl. Ex. E).  Magistrate Judge Kay also held that "[t]he question of when, and under what circumstance the existing Protective Order permits [Petitioners] to meet with [their] lawyer[s] has no bearing on the question of which Court has jurisdiction to review the merits of Petitioner[s'] challenge to [their] detention."  Mem. Op. at 22, *Adem v. Bush*, No. 05-CV-723 (RWR) (AK) (Mar. 14, 2006) (Dixon Decl. Ex. H).  In upholding Magistrate Judge Kay's ruling, Judge Roberts likewise held that "[e]nforcing the terms of the protective order in this case does not pose a danger of exceeding the court's jurisdiction, even if it ultimately determined that this court does not have jurisdiction to determine the merits of a petition for habeas corpus relief."  Mem. Op. at 17, *Adem v. Bush*, No. 05-cv-723 (RWR) (AK) (D.D.C. Apr. 28, 2006) (Notification of Supplemental Authority Ex. A).  Apart from conclusory statements that these

---

[4]  Respondents admittedly find it "difficult to accept" that the Court overruled their DTA arguments in its March 17, 2006 order.  Resp'ts' Br. at 12 n.9.

rulings are unpersuasive and raise jurisdictional issues, *see* Resp'ts' Br. at 13, Respondents simply fail to address the merits of these decisions in their opposition brief.[5]

Respondents' contention that an order granting the requested relief might infringe on the Court of Appeals' exclusive jurisdiction under the DTA is equally meritless.  Even if the DTA were held by the Court of Appeals to divest this Court of jurisdiction to rule on the merits of the Petition – which is not likely – the Amended Protective Order would continue to govern counsel access to detainees.  Respondents further concede – as they must – that regardless of what the Court of Appeals holds with respect to the validity and retroactive effect of the DTA, this Court has inherent power to enforce compliance with its lawful order through civil contempt.  *See* Resp'ts' Br. at 8.  This inherent power plainly provides a sufficient basis for the Court to hold Respondents in contempt for their refusal to comply with the Amended Protective Order here.  As set forth in Petitioners' opening brief, whatever challenges Respondents may offer to this Court's jurisdiction, they remain subject to the Court's inherent contempt power and are not free to disobey the Amended Protective Order simply because they believe that the Court lacked jurisdiction to enter it.  *See* Pet'rs' Br. at 7-8.

Respondents also wrongly contend that they "are not and never were in contempt of the Protective Order in this case" because the Amended Protective Order does not clearly and unambiguously require them to permit Petitioners access to their counsel.  *See* Resp'ts' Br. at 1.  In support of this claim, Respondents repeat the same specious textual arguments that the Amended Protective Order requires counsel to provide evidence of our authority to represent Petitioners before being permitted access to them.  *Id.* at 4 & n.2, 10-11.  Respondents even go so far as to suggest that the Amended Protective Order does not bind them in any respect

---

[5] While Respondents also suggest that they are considering whether to appeal or seek mandamus of Judge Roberts' decision in *Adem*, *see* Resp'ts' Br. at 13, they notably have failed to do either.

concerning counsel access to detainees. *See id.* at 3-4 (emphasizing that the Amended Protective Order applies to "*petitioners' counsel*"). Respondents again are demonstrably incorrect, and continue to assert these claims as if this Court and many other judges in this District had not already universally rejected them.

As set forth in Petitioners' opening brief, by its unambiguous terms, the Amended Protective Order binds *all counsel* in these cases, not just Petitioners' counsel. *See* Pet'rs' Br. at 5 (citing Amended Protective Order ¶ 2). In particular, the Amended Protective Order provides that Respondents must afford petitioners' counsel reasonable access to their clients at Guantánamo. *See id.* (citing Amended Protective Order Ex. A, § III.D.1). Moreover, as repeatedly found by judges in this District, once the Amended Protective Order is entered and counsel comply with its procedures for access to detainees, nothing more is required. *See id.* at 6-7. But Respondents fail to address these decisions, or even acknowledge the relevant provisions in the Amended Protective Order that require counsel to provide evidence of our authority to represent Petitioners within ten days *after* a second visit with Petitioners. *See id.* at 7. They instead essentially argue that the Court's prior ruling entering the Amended Protective Order has no impact on Petitioners' access to their counsel and is effectively meaningless.[6] Again, Respondents have simply arrogated to themselves unfettered discretion to determine whether or to what extent counsel have the legal authority to represent Petitioners.

In the end, it is clear that Respondents do not believe that this Court has any role in determining counsel access to detainees. Respondents therefore believe that they are free to ignore the Court's prior rulings by prohibiting Petitioners from meeting with their counsel on the

---

[6] Respondents suggest, for example, that the Court's March 17, 2006 order is meaningless because "even though the Protective Order was subsequently entered in this case, the Court never indicated that all detainees would be entitled to visits with their counsel regardless of whether the requirements of the Protective Order are satisfied." Resp'ts' Br. at 6-7 n.4.

basis of a non-existent next-friend challenge.  Respondents also continue to raise the specter of the DTA in a transparent attempt to convince the Court that, even if it were inclined to reach the obvious conclusion that Respondents' arguments are meritless, it cannot rule against them because to do so would infringe on the Court of Appeals' jurisdiction under the DTA.  This ploy has been repeatedly rejected by other judges in this District, as indicated above, and should be summarily rejected now.  It should not prevent this Court from expeditiously holding a hearing or taking any other action on Petitioners' contempt motion.

        All that Petitioners seek here is to meet with their counsel as contemplated by *Rasul v. Bush*, 542 U.S. 466 (2004), and decisions of other judges in this District.  *See*, *e.g.*, *Al-Odah v. United States*, 346 F. Supp. 2d 1, 8 (D.D.C. 2004) (Kollar-Kotelly, J.).  Respondents' strategy in the Guantánamo detainee cases has nonetheless been to devise any conceivable objection – however specious – to frustrate or prevent counsel access to detainees.  Although they have been unable to staunch counsel access to detainees entirely, Respondents have refused to allow such access unless and until a court orders them to do so.  Judges in this District have thus repeatedly issued rulings compelling Respondents to grant other petitioners access to their counsel, which has then allowed those meetings to occur without further delay.  That is exactly the relief that Petitioners seek here, with the added sanction of contempt because the Court's prior entry of the Amended Protective Order should have made this motion – and the predictable weeks of delay – unnecessary.

        The only possible rationale for Respondents' refusal to allow Petitioners access to their counsel in this case is to achieve as much delay as possible.  For only by delaying counsel access to Petitioners can Respondents conceal their innocence and continue to claim publicly that

- 6 -

they are lawfully imprisoned.[7]  Respondents' flagrant challenge to the authority of this Court and the integrity of its rulings should be rejected.

<u>Conclusion</u>

For all of these reasons, and for the reasons set forth in Petitioners' opening brief, the Court should hold Respondents in contempt of the Amended Protective Order and order them to permit Petitioners access to their counsel.

Dated:     New York, New York
           May 10, 2006

Respectfully submitted,

Counsel for Petitioners:

/s/ Paul Schoeman
Paul Schoeman (Pursuant to LCvR 83.2(g))
J. Wells Dixon (Pursuant to LCvR 83.2(g))
Joel Taylor (Pursuant to LCvR 83.2(g))
Michael J. Sternhell (Pursuant to LCvR 83.2(g))
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Tel:  (212) 715-9100
Fax:  (212) 715-8000

Alison Sclater (Pursuant to LCvR 83.2(g))
245 East 80th Street
New York, New York  10021
Tel:  (212) 717-2736

Barbara Olshansky (NY-0057)
Gitanjali S. Gutierrez (Pursuant to LCvR 83.2(g))
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel:  (212) 614-6439
Fax:  (212) 614-6499

---

[7] With respect to Petitioners' current status, Respondents merely contend that "[a]ny subsequent determination of whether it is in the interests of the United States to transfer or continue to detain enemy combatants, such as petitioners, . . . is an exercise of discretion by the Military that is not justiciable."  Resp'ts' Br. at 14-15 n.15.

KL3:2517954.1