*PREVIOUSLY FILED WITH THE CSO
AND CLEARED FOR PUBLIC FILING*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ——————————————— x | |
| : | |
| ABDUR RAZAKAH, *et al.*, : | ORAL ARGUMENT REQUESTED |
| : | |
| Petitioners, : | |
| : | |
| v. : | No. 05-CV-2370 (EGS) |
| : | |
| GEORGE W. BUSH, *et al.*, : | |
| : | |
| Respondents. : | |
| : | |
| ——————————————— x | |

## PETITIONERS' MOTION FOR PRODUCTION OF FACTUAL RETURN

*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

Petitioners Abdur Razakah and Ahmad Tourson ("Petitioners"), by and through their undersigned counsel, respectfully move for an order compelling Respondents to produce a factual return to their habeas corpus petition.

## PRELIMINARY STATEMENT

Petitioners are citizens of the Xinjiang Autonomous Region, a western province of China also commonly referred to as "Turkistan" or "East Turkistan." They are Uighurs, a Turkic Muslim minority group that has been brutally oppressed by the communist Chinese government. We understand that Petitioners – like all the other Uighur detainees – were cleared for release from the Guantanamo Bay Naval Base in Cuba ("Guantánamo") as early as 2003.[1] Respondents have never disputed this. Nonetheless, since 2002, Respondents have held Petitioners in indefinite detention, virtually *incommunicado*, without charge, and without any fair process by which they can challenge their detention. In addition, although it has been over one year since Petitioners filed their habeas petition, Respondents have refused to produce a factual return to the petition or otherwise supply information justifying the detention of Petitioners for nearly five years.

---

[1]    *See* Robin Wright, *Chinese Detainees Trapped in Limbo at Guantanamo*, Wash. Post, Aug. 24, 2005, *available at* 2005 WLNR 13274237 (Westlaw) ("In late 2003, the Pentagon quietly decided that 15 Chinese Muslims detained at . . . Guantanamo . . . could be released."); Editorial, *Detention Dilemma*, Wash. Post, May 3, 2005, *available at* 2005 WLNR 6902927 (Westlaw) ("[T]he military has determined that about 15 of [the Uighurs at Guantanamo] are not 'enemy combatants.' . . . The Pentagon has, consequently, cleared them for release."); Carol Rosenberg, *Closing Terror Prison Tricky for U.S.*, Miami Herald, June 12, 2005, *available at* 2005 WLNR 23041980 (Westlaw) ("[Uighur detainees in Guantanamo] are no longer classified as 'enemy combatants'"); *see also Qassim v. Bush*, No. 05-CV-497 (JR) (D.D.C.), Transcript of Status Conference, at 10-11 (Aug. 25, 2005) (excerpt of transcript attached as Ex. A) (admission by Respondents that several Uighurs have been classified as no longer enemy combatants); Denbeaux, et al., *Report on Guantanamo Detainees*: *A Profile of 517 Detainees through Analysis of Department of Defense Data*, at 21, *available at* http://law.shu.edu/news/guantanamo_report_final_2_08_06.pdf ("The Government has now decided that many of the Uighur detainees . . . are not enemy combatants and should no longer be detained.").

*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

Accordingly, Petitioners move the Court for an order compelling Respondents to produce a factual return to their habeas petition. Specifically, Petitioners request production of all classified and unclassified records from their Combatant Status Review Tribunal ("CSRT") and Administrative Review Board ("ARB") proceedings, including, without limitation, any audio recordings, verbatim transcripts and any interim or final decisions of those proceedings.[2] Furthermore, Petitioners request that Respondents be ordered to timely supplement these returns, on an ongoing basis, should the information therein change.

## BACKGROUND

Since 2002, Respondents have held at Guantánamo twenty-two Uighurs from China, most of whom were captured together by Pakistani tribesmen and sold to the United States for a substantial bounty. *See* Neil A. Lewis, *Freedom for Chinese Detainees Hinges on Finding a New Homeland*, N.Y. Times, Nov. 8, 2004, *available at* 2004 WLNR 6564157 (Westlaw) (twenty-two Uighur detainees have been held at Guantánamo); Robin Wright, *Chinese Detainees Trapped in Limbo at Guantanamo*, Wash. Post, Aug. 24, 2005, *available at* 2005 WLNR 13274237 (Westlaw) (several Uighurs picked up by Pakistani bounty hunters for U.S. payoffs); Michelle Faul, *Guantanamo Inmates Say They Were Sold to U.S.*, Philadelphia Inquirer, June 1, 2005, *available at* 2005 WLNR 22998072 (Westlaw) (several Uighurs report

---

[2]    In response to the U.S. Supreme Court's decisions in *Rasul v. Bush*, 542 U.S. 466 (2004), and *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004), the Department of Defense created the CSRT to review the classification of Guantánamo detainees as enemy combatants. *See* Denbeaux, et al., *No-Hearing Hearings, CSRT: The Modern Habeas Corpus? An Analysis of the Proceedings of the Government's Combatant Status Review Tribunals at Guantánamo* ("Seton Hall Report"), at 4, *available at* http://law.shu.edu/news/final_no_hearing_hearings_report.pdf. CSRT procedures provide that each detainee found to be an enemy combatant by the CSRT must be reviewed annually by the ARB. *Id.* at 35 n.30. The purpose of the ARB is to make a recommendation as to whether an enemy combatant should continue to be detained, either because he is a threat to the United States or its allies or because his continued detention is needed for intelligence or other law enforcement purposes. *See Said v. Bush*, No. 05-CV-2384, (RWR) (D.D.C.) (dkt. no 10, Ex. A) (Second Declaration of Frank Sweigart, Deputy Director of the Office for the Administrative Review of the Detention of Enemy Combatants at Guantanamo), ¶ 1.

*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

betrayal by Pakistani tribesmen); Warren Richey, *Innocent, But in Limbo at Guantanamo*, Christian Science Monitor, Feb. 13, 2006, *available at* 2006 WLNR 2456052 (Westlaw) (Uighur detainees say they were sold to U.S. forces for $5,000 each).

On May 5, 2006, five of those Uighur detainees, three of whom were represented by undersigned counsel, were flown, without notice to counsel or the Court, to a refugee camp in Tirana, Albania. At the time, the three Uighurs whom we represented had habeas corpus petitions pending before this Court in *Mamet v. Bush*, No. 05-CV-1886 (EGS). The remaining two Uighurs had an appeal pending before the Court of Appeals. In fact, the U.S. Government transferred these men to Albania one business day before the Court of Appeals was scheduled to hear oral arguments in their case. *See Qassim v. Bush,* No. 05-5477 (D.C. Cir. 2006).

The remaining seventeen Uighurs, two of whom are Petitioners here, still languish in Guantánamo and are now in their fifth year of indefinite detention. Undersigned counsel have attempted to obtain basic factual information about Petitioners directly from Respondents, but Respondents have repeatedly refused to honor our requests. *See* Correspondence with Department of Justice (attached as Ex. B).

In March 2006, the Court stayed this case pending the resolution of the appeal in *Al Odah v. United States,* No. 02-CV-828 (CKK) (D.D.C. 2005). In the stay order, the Court indicated that the parties should continue to file "appropriate pleadings." Minute Order, March 17, 2006.

## ARGUMENT

Pursuant to 28 U.S.C. § 2243 (2006), "[a] court . . . entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the

KL3 2558367.7

*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

applicant or person detained is not entitled thereto." The order to show cause "*shall be returned within three days* unless for good cause additional time, not exceeding twenty days, is allowed. The person to whom the . . . order is directed shall make a return certifying the true cause of the detention." *Id.* (emphasis added). Three hundred and seventy-one days have passed since the habeas petition was filed. During this time, Respondents have failed to provide any information regarding the purported basis for holding Petitioners in Guantánamo. Accordingly, the Court should order Respondents to satisfy their legal obligation to produce a factual return detailing the basis of Petitioners' confinement.[3]

## I.    PETITIONERS ARE ENTITLED TO FACTUAL RETURNS NOTWITHSTANDING RESPONDENTS' JURISDICTIONAL OBJECTIONS TO THE PETITION

### A.    The Detainee Treatment Act does not bar the Court from ordering the requested relief because Petitioners require factual returns even if the Act applies to their case

Numerous judges in this district have ordered Respondents to produce factual returns, notwithstanding the enactment of the Detainee Treatment Act of 2005 ("DTA"), Pub. L.

---

[3]    The issuance of the March 2006 stay order does not preclude this Court from entertaining the instant motion. Petitioners' motion does not approach the merits of the habeas petition, *see Al-Ghizzawi*, No. 05-CV-2378, slip op. at 3 (JDB) (D.D.C. Aug. 9, 2006), but simply seeks records similar to those that have been produced in numerous other detainee cases. Indeed, other judges in this district have ordered the production of factual returns despite having entered a stay order. *See, e.g., Thabid v. Bush*, No. 05-CV-2398 (ESH) (D.D.C. Aug. 18, 2006) (ordering returns four months after case was stayed); *Mamet v. Bush*, No. 05-CV-1602 (ESH) (D.D.C. Sept. 30, 2005) (staying case but ordering production of factual returns for Uighur detainee); *Zadran v. Bush*, No. 05-CV-2367 (RWR) (D.D.C. July 19, 2006) (staying case but directing production of factual return); *Alsaaei v. Bush*, No. 05-CV-2369 (RWR) (D.D.C. Aug. 14, 2006) (same); *Al-Ghizzawi*, No. 05-CV-2378 (JDB) (D.D.C. Aug. 9, 2006) (same); *Kahn v. Bush,* No. 05-CV-1001 (ESH) (D.D.C. Aug. 10, 2006) (same). In fact, since the issuance of the stay order – in which the Court invited counsel to continue to file appropriate pleadings – the Court has entertained and granted other motions filed in this case, including Petitioners' motion for an order requiring Respondents to provide counsel and the Court with thirty-days' advance notice before removing Petitioners from Guantánamo.

- 5 -

No. 109-148, § 1005(e), 119 Stat. 2680, 2742, which Respondents have wrongly argued elsewhere prevents the courts from doing so. *See, e.g., Feghoul v. Bush*, No. 06-CV-618 (RWR) (D.D.C. Oct. 31, 2006); *Al-Asadi v. Bush*, No. 05-CV-2197 (HHK) (D.D.C. Oct. 10, 2006); *Amin v. Bush*, No. 05-CV-2336 (PLF) (order signed by Robertson, J.) (D.D.C. Sept. 18, 2006); *Alsaaei v. Bush*, No. 05-CV-2369 (RWR) (D.D.C. Aug. 14, 2006); *Amin Ullah v. Bush*, No. 05-CV-1237 (ESH) (D.D.C. Aug. 10, 2006); *Kahn v. Bush*, No. 05-CV-1001 (ESH) (D.D.C. Aug. 10, 2006); *Al-Ghizzawi v. Bush*, No. 05-CV-2378 (JDB) (D.D.C. Aug. 9, 2006); *Zadran v. Bush*, No. 05-CV-2367 (RWR) (D.D.C. July 19, 2006); *Rabbani v. Bush*, No. 05-CV-1607 (RMU) (D.D.C. June 16, 2006); *Said v. Bush*, No. 05-CV-2384 (RWR) (D.D.C. May 23, 2006); *Almerfedi v. Bush*, No. 05-CV-1645 (PLF) (D.D.C. March 6, 2006). Indeed, at least five other Uighur detainees have obtained factual returns pursuant to orders from other judges in this district, four of which were issued post-DTA. *See Thabid v. Bush*, No. 05-CV-2398 (ESH) (D.D.C. Aug. 18, 2006); *Mamet v. Bush,* No. 05-CV-1602 (ESH) (D.D.C. Sept. 30, 2005); *Kabir v. Bush*, No. 05-CV-1704 (JR) (D.D.C. Aug. 31, 2005). In *Thabid* and *Kabir*, Judges Huvelle and Robertson entered *sua sponte* orders directing Respondents to produce factual returns.

In *Al-Ghizzawi*, Judge Bates concluded that the DTA could not justify the government's refusal to produce factual returns. In doing so, Judge Bates reasoned that "even if respondents' interpretation of the DTA's exclusive jurisdiction provision is correct . . . completion of any . . . judicial review [in the D.C. Circuit under the provisions of the DTA] would necessitate that petitioner's counsel have access to the CSRT records." *Al-Ghizzawi*, slip op. at 3-4. In fact, Respondents conceded that they "do not anticipate objecting to production of [the] petitioners' CSRT records for review in Court of Appeals' proceedings pursuant to [the

*PREVIOUSLY FILED WITH THE CSO
AND CLEARED FOR PUBLIC FILING*

DTA]." *Al-Ghizzawi*, (dkt no. 22), at 2. Similarly, in *Kahn*, Judge Huvelle rejected Respondents' jurisdictional objection as "an inadequate justification to further delay the relief sought by petitioner." *See Kahn*, slip op. at 2 ("[Factual returns] will obviously be needed regardless of the resolution of the jurisdictional question"); *see also Said*, slip op. at 4 ("Whatever forum is ultimately held to be the proper one to rule on a pre-DTA habeas petition, it is hardly sensible to withhold what no one disputes petitioners will ultimately be likely to receive."); *Feghoul*, slip op. at 2-3 ("Despite the lack of finality regarding the issues on appeal . . . it is hardly sensible to withhold or frustrate something that no one doubts is petitioner's right – a meaningful communication with counsel regarding the factual basis of petitioner's detention.").

The Court should thus order the relief sought by Petitioners' motion because even under the review process prescribed by the DTA – which Respondents contend is applicable here – Petitioners would be entitled to the information contained in the requested factual returns. *See Al-Ghizzawi*, slip op. at 3 ("[T]he outcome sought by petitioners through the present motion would ultimately be achieved regardless of the disposition of the jurisdictional question"). Accordingly, Respondents' jurisdictional challenge to this petition, based, as it is, on the habeas-stripping provisions of the DTA, should not preclude the Court from ordering the requested relief.[4]

---

[4]    Similarly, the Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109-366, 120 Stat. 2600, does not preclude the limited form of relief sought in the instant motion. Indeed, Judges Roberts and Kollar-Kotelly entered orders two weeks after the MCA was enacted directing Respondents to produce factual returns. *See Feghoul v. Bush*, No. 06-CV-618 (RWR) (D.D.C. Oct. 31, 2006); *Lal v. Bush*, No. 06-CV-1763 (CKK) (D.D.C. Oct. 29, 2006) (*sua sponte* ordering returns post-MCA); *see also Al-Asadi v. Bush*, No. 05-CV-2197, slip op. (HHK) (D.D.C. Oct. 10, 2006) (ordering factual return over Respondents' objection, *see id.* dkt. no. 39, at 3 n.1, that the MCA, which at the time was passed by Congress but awaiting Presidential sign-off, divested the court of jurisdiction over the case). In addition, Respondents have produced factual returns for Uighur detainees post-MCA in compliance with a pre-MCA order directing the submission of such returns. *See Thabid v. Bush*, No. 05-CV-2398 (ESH) (D.D.C.) (dkt. nos. 27, 28), at 1 n.1 (noting their objection that the MCA divests the district court of jurisdiction over the habeas petition but simultaneously submitting factual returns on October 17, 2006); *see also*

*PREVIOUSLY FILED WITH THE CSO
AND CLEARED FOR PUBLIC FILING*

**B.    Petitioners require a factual return in order to effectively challenge Respondents' assertion that they are "enemy combatants" subject to the DTA and MCA**

Petitioners are entitled to a factual return for the additional reason that they should be permitted to know whether they have been determined – at any point – to be non-enemy combatants by a CSRT, and thus not subject to the provisions of the DTA and MCA that Respondents argue prevent this Court from entertaining their habeas petition.[5]  Undersigned counsel has yet to be provided with the most rudimentary information in this regard.  It is our understanding that all twenty-two of the Uighur detainees from China – including Petitioners – were initially classified as non-enemy combatants; some, however, had additional CSRTs which determined that they were enemy combatants.  *See Kiyemba v. Bush*, Nos. 05-5487, 05-5488, Declaration of Sabin Willett, Sept. 1, 2006 ("Willett Decl.") ¶ 18, filed as Supplement to Appellees/Cross-Appellants' Emergency Motion to Supplement Record on Appeal (D.C. Cir. Sept. 6, 2006) (CSRT proceeding was held one year after a Uighur detainee was advised of his innocence).  We believe that this may be the case for all the Uighurs.

It appears that Petitioners have not been interrogated in years.  In the past, interrogators have advised Uighur detainees that they were innocent, their interrogations were

---

*Amin v. Bush*, No. 05-CV-2336 (PLF) (D.D.C.) (dkt. no. 29) (submitting returns on October 18, 2006); *Al-Asadi v. Bush*, No. 05-CV-2197 (HHK) (D.D.C.) (dkt. no. 42) (submitting returns on October 20, 2006).

[5]    Respondents have elsewhere acknowledged that if Petitioners have been designated as non-enemy combatants, they are not subject to the provisions of the DTA (and now the MCA). *See* Reply Brief for Appellants and Brief for Cross-Appellees, *Kiyemba v. Bush*, Nos. 05-5487 through 05-5492, 06-5042, (D.C. Cir.), at 6 ("Because [two of the detainees] have been determined by a CSRT not to be enemy combatants, they do not challenge any final CSRT decisions. As a result, this Court's "exclusive" jurisdiction under [the DTA] is inapplicable to their cases. The district courts, therefore, may continue to exercise jurisdiction over their habeas cases."); *see also Zakirjan v. Bush*, No. 05-CV-2053 (HHK) (D.D.C. Aug. 18, 2006) (vacating stay where the detainee, by the government's own concession, was determined not to be an enemy combatant).

*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

over, and they would soon be leaving Guantánamo. More than two, sometimes three years went by without release. *See* Willett Decl. ¶¶ 15, 18, 23; *see also Qassim v. Bush*, 407 F. Supp. 2d 198, 199 (JR) (D.D.C. 2005) (two Uighurs remained in Guantánamo for at least nine months after CSRT determined that they "should [not] be classified as enemy combatants"); Robin Wright, *Chinese Detainees Trapped in Limbo at Guantanamo*, Wash. Post, Aug. 24, 2005, *available at* 2005 WLNR 13274237 (Westlaw) (fifteen Uighurs have been *twice* cleared for release but "still languish at Guantanamo Bay"). One Uighur detainee who was advised of his innocence by an interrogator asked why he was previously designated as an enemy combatant. The interrogator appeared surprised and, after paging through some documents, shrugged his shoulders and said "Oops." Willett Decl. ¶ 23; *see also* Denbeaux, et al., *Report on Guantanamo Detainees: A Profile of 517 Detainees through Analysis of Department of Defense Data*, at 21, *available at* http://law.shu.edu/news/guantanamo_report_final_2_08_06.pdf ("The Government has publicly conceded that many of the Uigh[u]rs were wrongly found to be enemy combatants.").

Department of Defense data reveals that some detainees have been unanimously designated as non-enemy combatants by the CSRT but were later subjected to one or more re-hearings until they were found to be enemy combatants. Last month, Seton Hall University School of Law completed a study of the CSRT proceedings based on the records produced by the U.S. Government for 393 of the 558 detainees. *See* Denbeaux, et al., *No-Hearing Hearings, CSRT: The Modern Habeas Corpus? An Analysis of the Proceedings of the Government's Combatant Status Review Tribunals at Guantánamo* ("Seton Hall Report"), at 4, *available at* http://law.shu.edu/news/final_no_hearing_hearings_report.pdf. These records were released by the Department of Defense in response to (1) orders by district court judges in habeas cases and

- 9 -

*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

(2) FOIA requests. *Id.* at 4, 7. The records show that at least three detainees – one of whom is a

Uighur (*see Thabid v. Bush*, No. 05-CV-2398 (ESH) (D.D.C.) (dkt no. 27, Ex. A) (factual return

for Hassan Anvar), at 3-4, 7-14 (excerpt of return attached as Ex. C)) – were initially found not

to be enemy combatants (but never informed of the favorable decision) and then subjected to one

or more re-hearings before reconstituted panels until they were found to be enemy combatants.

Seton Hall Report, at 6, 37-39; *see also Lawyers Argue for Chinese at Guantanamo*, Assoc.

Press,     Dec.     5,     2006,     *available     at*     http://www.washingtonpost.com/wp-

dyn/content/article/2006/12/05/AR2006120500941.html (Navy spokesman confirming that

Uighurs had "multiple" enemy combatant reviews). There is no indication that the detainee was

informed of the additional tribunal(s), which were always conducted in the detainee's absence.

*Id.* at 3, 37. One detainee who was unanimously determined not to be an enemy combatant was

subjected to a second tribunal which also unanimously determined that he should not be

classified as an enemy combatant and then subjected to a *third*, newly constituted, tribunal,

which determined that he was an enemy combatant. *Id.* at 6, 37-39. Without these orders from

the district court, we would not have access to this vital information.

Furthermore, Respondents have previously *concealed* determinations by the

CSRT that Uighur detainees were not enemy combatants. In *Qassim v. Bush*, 407 F. Supp. 2d

198, 199 (D.D.C. 2005), Respondents led the district court and habeas counsel to believe that

two Uighur detainees were enemy combatants when the CSRT determined many months earlier

that the Uighurs should not be classified as enemy combatants. *See Qassim*, No. 05-CV-497

(JR), Transcript of Oral Argument, at 2-3, 20-21 (August 1, 2005) (excerpt of transcript attached

as Ex. D) (Judge Robertson accusing Respondents of implying that the Uighur petitioners were

enemy combatants when they were not). Respondents kept the Uighurs' status a secret from the

- 10 -

*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

court and counsel, even after habeas counsel twice sought information from the government about the Uighurs' CSRT proceedings. *Qassim*, 407 F. Supp. 2d at 199 ("The government . . . knew about the CSRT determination [that the Uighur petitioners were not enemy combatants] but advised nobody"). Judge Robertson found that the Uighurs' continued imprisonment for the nine months after the CSRT found them to be non-enemy combatants was unlawful, holding that the government does not have "wind up" authority to indefinitely detain non-U.S. citizens who are determined not to be enemy combatants. *Id.* at 200-01.

Accordingly, the submission of a factual return is especially crucial in the present case given the unique circumstances of the Uighurs at Guantánamo. Without an order directing Respondents to produce factual returns, counsel and the Court have no assurance of ever receiving confirmation that Petitioners are not, and never were, enemy combatants and thus not subject to the DTA and MCA.

## II.    RESPONDENTS' REFUSAL TO PROVIDE FACTUAL RETURNS DENIES PETITIONERS MEANINGFUL ACCESS TO AND REPRESENTATION BY COUNSEL

Respondents' refusal to produce Petitioners' factual returns severely prejudices Petitioners' ability to meaningfully communicate with habeas counsel. *See Al-Ghizzawi*, slip op. at 3; *Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 200 (D.D.C. 2005) ("[T]he factual returns appear necessary for petitioners' counsel effectively to represent petitioners. . . . even initial conversations by counsel with their clients may be very difficult without access to that basic factual information"); *Kahn*, slip op. at 2 ("Without access to the information contained within a factual return, petitioner's counsel cannot offer anything approaching effective representation in these proceedings."); *Rabbani*, slip op. at 2-3 ("[P]etitioners' counsel should be able to review the returns now so that they can develop their case and prepare for any consultation with their

clients."). This prejudice is particularly grave in the present circumstances given the already-stringent limitations associated with attorney-client communications in Guantánamo. *See Al-Ghizzawi,* slip op. at 3. Petitioners' counsel seek basic information regarding the legal justification for Petitioners' detention. The absence of this information precludes us from thoroughly investigating and preparing our case, interviewing family members, and effectively representing our clients, including consulting with, advising, and assisting Petitioners in preparation for any future hearings. If our client meetings are to be productive, counsel must have an opportunity to review and consider the factual returns. Counsel cannot effectively litigate the legitimacy of Petitioners' detention without knowing the basis for that detention.

### III.    RESPONDENTS SHOULD NOT BE ALLOWED TO RESIST PRODUCTION OF FACTUAL RETURNS ON THE GROUND THAT THE RETURNS MAY CONTAIN CLASSIFIED INFORMATION OR WOULD BE BURDENSOME TO ASSEMBLE

In numerous other detainee cases, Respondents have objected to the production of factual returns on the grounds that the submission of these returns burdens the government's resources and risks the inadvertent disclosure of classified information. Courts have rejected these objections. *See, e.g., Rabbani v. Bush,* No. 05-CV-1607 (RMU), slip op. at 3 (D.D.C. June 16, 2006). Respondents have provided factual returns in many other detainee cases and produced thousands of pages of tribunal transcripts to the media as a result of FOIA litigation. If Respondents can make factual returns readily available to the press – and allow members of the press to attend those hearings – they can certainly provide returns to habeas counsel. *See also* Kathleen T. Rhem, *Reporters Offered Look Inside Combatant Status Review Tribunals,* Aug. 29, 2004, *available at* http://www.defenselink.mil/news/Aug2004/n08292004_2004082902.html (media was offered the chance to observe a CSRT first-hand). In fact, audio recordings of certain

- 12 -

*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

detainee hearings were recently broadcast on National Public Radio. *See* Jackie Northam, *Listening in on Detainee Hearings*, National Public Radio, Dec. 2, 2006, *available at* http://www.npr.org/templates/story/story.php?storyId=6520816; Jackie Northam, *Tapes Provide First Glimpse of Secret Gitmo Panels*, Dec. 2, 2006, National Public Radio, *available at* http://www.npr.org/templates/story/story.php?storyId=6514923.

The information we seek is already in Respondents' possession. The CSRT hearings have all been completed and Respondents have simply to produce the returns. *See Said v. Bush*, No. 05-CV-2384 (RWR) (D.D.C.) (dkt. no 10, Ex. A) (Second Declaration of Frank Sweigart, Deputy Director of the Office for the Administrative Review of the Detention of Enemy Combatants at Guantanamo), ¶ 3 ("CSRT proceedings concluded in March 2005. Every detainee confirmed to be an enemy combatant through the CSRT process and who is eligible for consideration by an ARB has received [such] notice . . . ."); DoD News Briefing with Secretary Rumsfeld and General Pace (June 14, 2005), *available at* http://www.defenselink.mil/transcripts/2005/tr20050614-secdef3042.html ("Every detainee currently at Guantanamo has received [a CSRT] hearing."). Given that all CSRT proceedings were completed over one year ago, Respondents are well aware of the basis of Petitioners' confinement. That Respondents can produce such information expeditiously is evidenced by their prompt release of tribunal transcripts to the media. Respondents have had almost five years to interrogate Petitioners, review the evidence relating to their continued detention at Guantánamo, and evaluate their status as "enemy" or "non-enemy" or "no longer enemy" combatants. Any additional time or effort expended in organizing and photocopying documents is, to say the least, secondary to Petitioners' compelling interest in knowing the legal and factual basis of their indefinite detention.

*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

Furthermore, Respondents' claimed concern about the inadvertent disclosure of classified material is without merit. Classified materials will only be provided to counsel who have obtained the requisite security clearances, and undersigned counsel are legally bound by a comprehensive protective order which "will guard against any inadvertent disclosures." *Rabbani*, slip op. at 3. "[T]he Government's decision to grant an individual attorney a security clearance amounts to a determination that the attorney can be trusted with information at that level of clearance." *Al Odah v. United States*, 346 F. Supp. 2d 1, 14 (D.D.C. 2004). Accordingly, Respondents have no meaningful basis for objecting to the production of a complete set of factual returns detailing the basis of Petitioners' confinement.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court grant in its entirety the instant motion for production of factual returns. Given that the Uighur Petitioners continue to suffer in their fifth year of indefinite detention despite the Pentagon's determination that they can be released, and given that their habeas petition has been pending for over a year without any certification of the true basis for their detention, Petitioners respectfully request that the Court direct Respondents to produce a factual return to their habeas petition within ten days of the Court's order. Indeed, judges in this district have set stricter timelines on the submission of returns. *See, e.g., Hatim v. Bush*, No. 05-CV-1429 (RMU) (D.D.C. Aug. 22, 2005) (ordering production of returns within seven days); *Errachidi v. Bush,* No. 05-CV-640 (EGS) (D.D.C. Apr. 21, 2005) (five days); *Abdullah v. Bush*, No. 05-CV-23 (RWR) (D.D.C. Apr. 8, 2005) (eight days); *Said v. Bush*, No. 05-CV-2384 (RWR) (D.D.C. May 26, 2006) (ordering submission of four classified returns within one week). Respondents should not be permitted to delay any longer in producing these essential records.

*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

Dated:     New York, New York
           December 18, 2006

Respectfully submitted,

Counsel for Petitioners:

/s/ Seema Saifee

Paul Schoeman (Pursuant to LCvR 83.2(g))
Michael J. Sternhell (Pursuant to LCvR 83.2(g))
Darren LaVerne (Pursuant to LCvR 83.2(g))
Seema Saifee (Pursuant to LCvR 83.2(g))
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Tel:  (212) 715-9100
Fax:  (212) 715-8000

Gitanjali S. Gutierrez (Pursuant to LCvR 83.2(g))
J. Wells Dixon (Pursuant to LCvR 83.2(g))
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel:  (212) 614-6464
Fax:  (212) 614-6499

Alison Sclater (Pursuant to LCvR 83.2(g))
245 East 80th Street, #9J
New York, New York  10021
Tel:  (212) 717-2736

- 15 -

# EXHIBIT A

Abu Bakker Qassim, et al. vs.                CV 05-497                August 25, 2005
George W. Bush, et al.

Page 1

```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

ABU BAKKER QASSIM, et          :      Civil Action No. 05-497
al.,                           :
          Plaintiffs,          :      August 25, 2005
v.                             :
GEORGE BUSH, et al.,           :
          Defendants           :      2:00 p.m.
. . . . . . . . . . . . . . . :       . . . . . . . . . . . .

                  TRANSCRIPT OF STATUS CONFERENCE
               BEFORE THE HONORABLE JAMES ROBERTSON
                  UNITED STATES DISTRICT JUDGE
APPEARANCES:
For the Plaintiffs:        P. SABIN WILLETT, ESQUIRE
                           BINGHAM McCUTCHEN, LLP
                           150 Federal Street
                           Boston, Massachusetts  02110-1726
                           (617) 951-8684

                           SUSAN BAKER MANNING, ESQUIRE
                           BINGHAM McCUTCHEN, LLP
                           1120 20th Street, NW
                           Suite 800
                           Washington, D.C.  20036-3406
                           (202) 778-6172
                           BARBARA J. OLSHANSKY, ESQUIRE
                           CENTER FOR CONSTITUTIONAL RIGHTS
                           666 Broadway
                           New York, New York  10012
                           (212) 614-6439
For the Defendants:        TERRY M. HENRY, ESQUIRE
                           U.S. DEPARTMENT OF JUSTICE
                           CIVIL DIVISION
                           20 Massachusetts Avenue, NW
                           Room 7144
                           Washington, D.C.  20530
                           (202)514-4107
Court Reporter:            REBECCA KING, RPR, CRR
                           Official Court Reporter
                           Room 4802-B, U.S. Courthouse
                           Washington, D.C. 20001
                           (202) 898-9398
Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.
```

Page 10

1    to the medical care and access to Qur'ans and prayer books and

2    things like that that all the other detainees have.

3              THE COURT:  There's no lockdown in any part of this

4    facility, this Camp Iguana?

5              MR. HENRY:  They are free to roam that facility.

6              THE COURT:  24/7?

7              MR. HENRY:  24/7, yes, Your Honor.

8              THE COURT:  But there's a gate around it?

9              MR. HENRY:  There is a fence.

10             THE COURT:  A fence around it?

11             MR. HENRY:  Yes, Your Honor, there is.

12             THE COURT:  How many people are there?

13             MR. HENRY:  Currently there are about 10 NLEC's total,

14   and all of the NLEC's, all the Uighur NLECs are there.  I think

15   we had mentioned before that -- in General Hood's declaration

16   that there were a couple of NLEC's that were in another camp due

17   to disciplinary infractions.  I think two of those were Uighurs,

18   and those two Uighur folks have been moved to Camp Iguana.

19             I believe that there is one or two other nationality

20   NLEC's that are in a disciplinary confinement situation, and one

21   that is in another area due to medical needs.  You know, he's

22   not there for disciplinary reasons.

23             THE COURT:  There are 10 Uighur NLEC's, or 10 NLEC's

24   all total?

25             MR. HENRY:  All total.

Abu Bakker Qassim, et al. vs.
George W. Bush, et al.

CV 05-497

August 25, 2005

Page 11

1        THE COURT:  Of whom how many are Uighurs, are you able

2   to tell?

3        MR. HENRY:  I'm not able to say on the public record,

4   but it's just a handful.

5        THE COURT:  And when counsel come down to Gitmo next

6   week to meet with these people, will they be able to meet with

7   them in a free and open manner at Camp Iguana, or are they going

8   to have to be taken back over to Camp Echo and be shackled to

9   the floor again?

10       MR. HENRY:  All of the meetings at Camp Echo; as a

11  matter of practice, there are safety considerations that we've

12  talked about before.  The shackling is one leg to a bolt in the

13  floor, standard operating procedure, the purpose of which is to

14  prevent any sort of incident where someone could, you know, hurt

15  someone else.  Which attempts like that are not unheard of.

16  It's difficult for DOD to have basically a nonuniform policy in

17  this regard with respect to specific individuals, that kind of

18  thing.  They have, like I said, a standard operating procedure

19  there.

20       But all of the counsel meetings are there in Camp Echo.

21  There would be concerns about having some kind of meeting

22  arrangement in Camp Iguana; number one because there's not

23  facilities for it there, and number two, there's the aspect of

24  subjecting other NLEC's over there in Camp Iguana to inspection,

25  if you will, by outsiders.

# EXHIBIT B

KRAMER LEVIN NAFTALIS & FRANKEL LLP

J. WELLS DIXON
ASSOCIATE
PHONE 212-715-9491
FAX 212-715-8000
JDIXON@KRAMERLEVIN.COM

February 15, 2006

Via Federal Express

Andrew I. Warden, Esq.
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Room 6120
Washington, DC 20530

Re:    _Razakah v. Bush_, Civil Action No. 05 CV 2370 (EGS)

Dear Mr. Warden:

We represent petitioners Abdur Razakah (ISN 219) and Ahmad Doe (ISN 201) ("Petitioners") in the above-captioned action pending in the District of Columbia. We write in connection with Petitioners' upcoming 2006 Annual Review Board ("ARB") hearings to request that the government provide us with copies of all records relating to Petitioners' Combatant Status Review Tribunal ("CSRT") hearings.* This information is critical to our preparation of an ARB submission on behalf of Petitioners because it will establish that they present no threat to the United States or its allies and have been wrongly classified as "enemy combatants." Without access to these records, we cannot meaningfully assist our clients in the ARB process, especially because you have thus far denied our requests to contact or visit them.

Petitioners are Uighurs, a Turkic Muslim minority group native to western China that has been brutally repressed by the Chinese government. We believe that the CSRT records will show that like the other Uighur detainees at Guantánamo Bay – most of whom the government has already determined are non-enemy combatants – Petitioners were not members of the Taliban or Al Qaeda and have never taken up arms against United States forces. Nor have they supported forces hostile to or engaged in armed conflict with the United States. We believe that Petitioner Razakah instead was captured by bounty hunters in Pakistan after he fled persecution in China, and was mistakenly sent to Guantánamo with the other non-enemy combatant Uighurs. We similarly believe that Petitioner Ahmad was mistakenly sent to Guantánamo after he fled persecution in China and was captured by the Northern Alliance in Afghanistan. Moreover, we believe that the CSRT records will confirm that like the other Uighur detainees, Petitioners have twice been cleared for release from Guantánamo but remain imprisoned indefinitely and virtually _incommunicado_.

---

* We have received the level of security clearance necessary to gain access to all CSRT records. At a minimum, we request copies of the unclassified CSRT returns.

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP

Andrew I. Warden, Esq.
February 15, 2006
Page 2

Petitioners plainly pose a unique problem for us and for the government because they do not belong in Guantánamo but cannot be repatriated to China where they would likely be tortured or killed. It is therefore in our mutual interests to find a suitable country of transfer for these innocent men as soon as possible. We require the CSRT records now in order to address for the ARB the basis for the government's initial determination that Petitioners are enemy combatants and show why they should be reclassified as non-enemy combatants. We also require this information to show why Petitioners should be transferred to Camp Iguana, where the other Uighurs are detained in less restrictive living conditions pending a resolution of their unfortunate situation.

Very truly yours,

J. Wells Dixon

| | |
|---|---|
| **From:** | Andrew.Warden@usdoj.gov |
| **Sent:** | Tuesday, February 21, 2006 4:16 PM |
| **To:** | Dixon, J. Wells |
| **Subject:** | RE: Razakah v. Bush, C.A. 05-CV-2370 (EGS) |

Wells,

Thank you for your letter and e-mail.  Respondents, however, are not in a position to
accede to your request for production of the CSRT record in this litigation.  Respondents
also cannot agree to your request to identify the publicly available materials that relate
to your putative clients.

Best regards,

Andrew

Andrew I. Warden
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Room 6120
Washington, DC 20530
Tel: 202.616.5084


-----Original Message-----
From: JDixon@KRAMERLEVIN.com [mailto:JDixon@KRAMERLEVIN.com]
Sent: Tuesday, February 21, 2006 3:09 PM
To: Warden, Andrew (CIV)
Subject: Razakah v. Bush, C.A. 05-CV-2370 (EGS)

Andrew:

I write to follow up on my letter to you, dated February 15, 2006, requesting all CSRT
records relating to petitioners Abdur Razakah (ISN
219) and Ahmad Doe (ISN 201) in the above-captioned action.  Please let me know as soon as
possible whether you will provide this information to us.  As explained in my letter, this
information is critical to our preparation of an ARB submission on behalf of our clients.
We require it now in order to assist our clients in the ARB process, which commences on or
about February 24th.

We also have received approximately 4,000 pages of unclassified CSRT returns which
apparently were produced by the government to the Associated Press.  Many of these
documents plainly reference Uighur detainees, although we cannot determine which documents
(if any) relate specifically to our clients because they are redacted.  As an alternative
to providing the CSRT records that we have requested, we would ask that you identify which
of the already publicly available materials relate to our clients.  At a minimum, this
proposal would allow us to address the government's initial determination that our clients
are "enemy combatants."  Again, please let me know as soon as possible whether you will
provide this information to us.

Thank you,

- Wells


J. Wells  Dixon
Associate
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
Tel: 212-715-9491

1

This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.

## Saifee, Seema

**From:** Dixon, J. Wells
**Sent:** Monday, December 18, 2006 11:39 AM
**To:** Saifee, Seema
**Subject:** FW: Status of Uighur detainees

-----Original Message-----
**From:** Elizabeth P. Gilson [mailto:egilson@snet.net]
**Sent:** Wed 11/22/2006 1:29 PM
**To:** Terry.Henry@usdoj.gov
**Cc:** 'Manning, Susan Baker'; 'Clarke, George M'; Dixon, J. Wells; 'Willett, P. Sabin'; KGoyer@mwe.com; pschoenman@KRAMERLEVIN.COM
**Subject:** Status of Uighur detainees

November 22, 2006

Dear Terry:

We, as counsel for the Uighur detainees at Guantanamo Bay, need certain information so that we can determine whether our clients might be subject to the Military Commissions Act of 2006 and to prepare for possible post-DTA review. Kindly provide answers to the following:

1.    Please identify which of the Uighur detainees listed below:

A. has ever been determined not to be an enemy combatant; and/or

B.   whether any CSRT panel ever concluded that the preponderance of the evidence did not support a finding that any of the below-listed Uighur detainees was an enemy combatant in that he is an individual who was part of or supporting Taliban or al Qaeda forces, or associated forces that are engaged in hostilities against the US or its coalition partners; has committed a belligerent act; or has directly supported hostilities in and of enemy armed forces.

2.    Please provide further confirmation of recent State Department reports that all of the Uighur detainees have been cleared for release to any country without conditions; and

3.    Please provide a status report on the government's efforts regarding transfer of the Uighur detainees to a third country.

The Uighur detainees are listed below:

**Edham Mamet   - ISN # 102**

**Abdul Nasser  - ISN # 278**

**Abdul Sabour  -  ISN# 275**

**Abdul Semet -  ISN # 295**

Dear Terry:

**Hammad  - ISN# 328**

**Huzaifa Parhat  - ISN #320**

**Jalal Jalaldin  - ISN #285**

**Khalid Ali  - ISN #280**

**Sabir  Osman  - ISN # 282**

**Abdul Razakah  - ISN # 219**

**Ahmad Tourson - ISN # 201**

**Arkina Amahmud - ISN # 103**

**Bahtiyar Mahnut - ISN # 277**

**Ali Mohammad - ISN # 250**

**Thabid - ISN # 289**

**Abdul Ghaffar -  ISN # 281**

**Adel Noori - ISN # 584**

**Abdullah Tohtasinovich Magrupov - ISN # 528**

**Abdulrahim Kerimbakiev  - ISN # 521**

**Yakub Abahanov – ISN # 526**

Thank you for your assistance in this matter.

Very truly yours,

Beth Gilson

# centerforconstitutionalrights

666 broadway new york, ny 10012
t 212 614 6464 f 212 614 6499 www.ccr-ny.org

November 28, 2006

<u>Via E-Mail</u>
(Terry.Henry@usdoj.gov)

Terry M. Henry, Esq.
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, DC 20530

Re:    *Razakah v. Bush*, No. 05-CV-2370 (EGS) (D.D.C.)
       <u>*Mohammon v. Bush*, No. 05-CV-2386 (RBW) (D.D.C.)</u>

Dear Terry:

As a follow up to Beth Gilson's email to you, dated November 22, 2006, I am writing concerning the Uighur petitioners in the above-captioned cases. Their ISNs are 201, 219, 281 and 584.

I request that the government produce copies of all classified and unclassified records from the Combatant Status Review Tribunal and Administrative Review Board proceedings for these men, including without limitation any audio recordings or verbatim transcripts of those proceedings and any interim or final decisions of those proceedings.* This information is essential to determine whether these men may be subject to the Military Commissions Act of 2006 and perhaps to seek appropriate relief in the Court of Appeals. The government has also already provided such information to counsel for other Uighur detainees, including documents referring in part to the petitioners here, and to members of the press who recently broadcast audio excerpts of detainee hearings on National Public Radio. There is no reason why this information should not be provided to counsel for these petitioners.

Please let me know by December 8, 2006, whether the government will agree to provide this information (and the information requested in Beth Gilson's email). If I do not hear from you, I will assume that the government has denied our requests and you would object to a related motion.

Very truly yours,

J. Wells Dixon

---

* I and other attorneys representing these men have obtained the necessary security clearances.



# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HASSAN ANVAR,                         )
                                      )
                                      )
            Petitioner,               )
                                      )
      v.                              )        Civil Action No. 05-2386 (RBW)
                                      )
GEORGE W. BUSH, *et al.,*             )
                                      )
            Respondents.              )
                                      )

## DECLARATION OF TERESA A. McPALMER

Pursuant to 28 U.S.C. § 1746, I, Commander Teresa A. McPalmer, Judge Advocate General's Corps, United States Navy, hereby state that to the best of my knowledge, information, and belief, the following is true, accurate and correct:

1.      I am the Legal Advisor to the Office for the Administrative Review of the Detention of Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba (OARDEC). In that capacity I am an advisor to the Director, Combatant Status Review Tribunals.

2.      I hereby certify that the documents attached hereto constitute a true and accurate copy of the portions of the record of proceedings before the Combatant Status Review Tribunal related to petitioner Hassan Anvar that are suitable for public release. The portions of the record that are classified or considered law enforcement sensitive are not attached hereto or were redacted by an OARDEC staff member. This staff member also redacted information that would personally identify certain U.S. Government personnel in order to protect the personal privacy and security of those individuals.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 8 September 2006

Teresa A. McPalmer
CDR, JAGC, U. S. Navy



# Department of Defense
## Director, Combatant Status Review Tribunals

OARDEC/Ser: 0 4 8

2 5 FEB 2005

FOR OFFICIAL USE ONLY

From: Director, Combatant Status Review Tribunal

Subj: **REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN # 250**

Ref: (a) Deputy Secretary of Defense Order of 7 July 2004
(b) Secretary of the Navy Order of 29 July 2004

1. I concur in the decision of the Combatant Status Review Tribunal that Detainee ISN # 250 meets the criteria for designation as an Enemy Combatant, in accordance with references (a) and (b).

2. This case is now considered final and the detainee will be scheduled for an Administrative Review Board.

J. M. McGARRAH
RADM, CEC, USN

Distribution:
NSC (Mr. John B. Wiegmann)
DoS (Ambassador Prosper)
DASD-DA
JCS (J5)
SOUTHCOM (CoS)
COMJTFGTMO
OARDEC (Fwd)
CITF Ft Belvoir

FOR OFFICIAL USE ONLY

UNCLASSIFIED

8 Feb 05

MEMORANDUM

From: Legal Advisor
To:    Director, Combatant Status Review Tribunal

Subj:  LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
       FOR DETAINEE ISN # 250

Ref:   (a) Deputy Secretary of Defense Order of 7 July 2004
       (b) Secretary of the Navy Implementation Directive of 29 July 2004

Encl:  (1) Appointing Order for Tribunal # 32 of 21 January 2005
       (2) Appointing Order for Tribunal # 18 of 1 November 2004
       (3) Record of Proceedings

1. Legal sufficiency review has been completed on the subject Combatant Status Review
Tribunal in accordance with references (a) and (b). After reviewing the record of the Tribunal, I
find that:

    a. The detainee was properly notified of the Tribunal process and affirmatively declined
to participate. The detainee did provide a statement, contained in exhibit D-b of
enclosure (3) of enclosure (5) of the Tribunal Decision Report.

    b. The Tribunals were properly convened and constituted by enclosure (1) and enclosure
(2).

    c. The Tribunal substantially complied with all provisions of references (a) and (b).
Note that some information in exhibits R-4, R-6, and R-8 was redacted. The FBI
properly certified in exhibit R-2 that the redacted information would not support a
determination that the detainee is not an enemy combatant.

    d. On 16 November 2004 a tribunal unanimously determined that the detainee was not
properly designated as an enemy combatant. Following that tribunal, CSRT intelligence
personnel conducted another search of the Government Information for evidence relevant
to ISN 250's status. They collected additional evidence which eventually became
exhibits R-18 through R-29. Due to the detachment from OARDEC of two of the three
members of the original tribunal panel, the additional evidence, along with the original
evidence and original Tribunal Decision Report, was presented to Tribunal panel # 32 to
reconsider the detainee's status. (One of the members of the original tribunal sat on the
new tribunal panel.) Following their consideration of the new information along with the
original information, this Tribunal unanimously determined that the detainee was
properly classified as an enemy combatant.

UNCLASSIFIED

UNCLASSIFIED

Subj:  LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
FOR DETAINEE ISN # 250

I note that Exhibit R-18 contains a troubling statement: "Inconsistencies will not cast a
favorable light on the CSRT process or the work done by OARDEC. This does not
justify making a change in and of itself, but is a filter by which to look at the overall
Uighur transaction since they are all considered the same notwithstanding a specific act."
Fortunately, there is no indication that the Tribunal adopted this inappropriate "one size
fits all" policy.

e.  The detainee did not request that any witnesses or evidence be produced.

f.  The Tribunal's decision that detainee ISN # 250 is properly classified as an enemy
combatant was unanimous.

g.  The detainee affirmatively chose not to participate in the CSRT process but requested
that his Personal Representative make an oral statement to the Tribunal about the
allegations contained in the unclassified summary.  A letter from the Personal
Representative initially assigned to represent the detainee at Guantanamo Bay, Cuba,
reflects the detainee's elections and is attached to the Tribunal Decision Report as exhibit
D-b. The original Tribunal proceedings were held *in absentia* outside Guantanamo Bay
with a new Personal Representative who was familiar with the detainee's file.  This
Personal Representative had the same access to information and evidence as the Personal
Representative from Guantanamo Bay.  The addendum proceedings were conducted with
yet a third Personal Representative because the second Personal Representative had been
transferred to Guantanamo Bay.  This Personal Representative also had full access to the
detainee's file and original Personal Representative's pass-down information.  The
detainee's Personal Representatives were given the opportunity to review the respective
records of proceedings and both declined to submit post-tribunal comments to the
Tribunal.

2.  The proceedings and decision of the Tribunal, as reflected in enclosure (3), are legally
sufficient and no corrective action is required.

3.  I recommend that the decision of the Tribunal be approved and the case be considered final.

JAMES R. CRISFIELD JR.
CDR, JAGC, USN



Department of Defense
Director, Combatant Status Review Tribunals

21 Jan 05

From: Director, Combatant Status Review Tribunals

Subj: APPOINTMENT OF COMBATANT STATUS REVIEW TRIBUNAL #32

Ref: (a) Convening Authority Appointment Letter of 9 July 2004

By the authority given to me in reference (a), a Combatant Status Review Tribunal established by "Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba" dated 29 July 2004 is hereby convened. It shall hear such cases as shall be brought before it without further action of referral or otherwise.

The following commissioned officers shall serve as members of the Tribunal:

    MEMBERS:

        ███████████, Colonel, U.S. Army; President

        ███████████, Lieutenant Colonel, U.S. Air Force; Member

        ███████████, Lieutenant Commander, JAGC, U.S. Navy; Member (JAG)

J. M. McGARRAH
Rear Admiral
Civil Engineer Corps
United States Navy



Department of Defense
Director, Combatant Status Review Tribunals

1 Nov 04

From: Director, Combatant Status Review Tribunals

Subj: APPOINTMENT OF COMBATANT STATUS REVIEW TRIBUNAL #18

Ref: (a) Convening Authority Appointment Letter of 9 July 2004

By the authority given to me in reference (a), a Combatant Status Review Tribunal established by "Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba" dated 29 July 2004 is hereby convened. It shall hear such cases as shall be brought before it without further action of referral or otherwise.

The following commissioned officers shall serve as members of the Tribunal:

**MEMBERS:**

███████████████████, Colonel, U.S. Air Force; President

████████████, Lieutenant Colonel, U.S. Air Force; Member

████████████, Lieutenant Commander, U.S. Navy; Member
(JAG)

J. M. McGARRAH
Rear Admiral, Civil Engineer Corps
United States Navy

SECRET//NOFORN//X1

## (U) Combatant Status Review Tribunal Decision Report Cover Sheet

(U) This Document is UNCLASSIFIED Upon Removal of Enclosures (2), (3) and (5).

(U) TRIBUNAL PANEL: ___32___

(U) ISN#: ___250___

Ref:  (a) (U) Convening Order for Tribunal #32 dated 21 January 2005 (U)
      (b) (U) CSRT Implementation Directive of 29 July 2004 (U)
      (c) (U) DEPSECDEF Memo of 7 July 2004 (U)

Encl:  (1) (U) Unclassified Summary of Basis for Tribunal Decision (U/FOUO)
       (2) (U) Classified Summary of Basis for Tribunal Decision (S/NF)
       (3) (U) Copies of Documentary Evidence Presented (S/NF)
       (4) (U) Personal Representative's Record Review (U/FOUO)
       (5) (U) CSRT Decision Report of Tribunal #18 (undated) (S/NF)

1. (U) This Tribunal was convened by references (a) and (b) to make a determination as to whether the detainee meets the criteria to be designated as an enemy combatant as defined in reference (c).

2. (U) On 16 November 2004, a previous Tribunal determined, by a preponderance of the evidence, that Detainee #250 was not properly designated as an enemy combatant as defined in reference (c). See enclosure (5). On 25 January 2005, this Tribunal was convened to review additional classified evidence, unavailable to the previous Tribunal, concerning Detainee #250. On 25 January 2005, this Tribunal, upon review of all the evidence, determined that Detainee #250 was properly designated as an enemy combatant as defined in reference (c).

3. (U) In particular, the majority of the Tribunal found that the preponderance of the evidence supports the finding that this detainee was associated with and supported al Qaida and the Taliban, as more fully discussed in the enclosures.

4. (U) Enclosure (1) provides an unclassified account of the basis for the Tribunal's decision. A detailed account of the evidence considered by the Tribunal and its findings of fact are contained in enclosures (1) and (2).

███████████████████████, Colonel, U.S. Army
Tribunal President

DERV FM: Multiple Sources     SECRET//NOFORN//X1
DECLASS: X1

UNCLASSIFIED//~~FOUO~~

# UNCLASSIFIED SUMMARY OF BASIS FOR TRIBUNAL DECISION

### (Enclosure (1) to Combatant Status Review Tribunal Decision Report)

TRIBUNAL PANEL: _____ #32 _____

ISN #: _____ 250 _____

## 1. Introduction

As the Combatant Status Review Tribunal (CSRT) Decision Report indicates, the Tribunal has determined that this detainee is properly classified as an enemy combatant and was associated with and supported al Qaida and the Taliban. In reaching its conclusions, the Tribunal considered both classified and unclassified information. The following is an account of the unclassified evidence considered by the Tribunal and other pertinent information. Classified evidence considered by the Tribunal is discussed in Enclosure (2) to the CSRT Decision Report.

## 2. Synopsis of Proceedings

The unclassified summary of evidence presented to the Tribunal by the Recorder indicated that the detainee traveled to Afghanistan for weapon and tactics training, traveling with an illegal passport. The detainee did labor work on the houses while at the Tora Bora training camp after arriving in September of 2001, where he received weapon training on the A-K rifle. He knew that the land where the terrorist training camp was located was donated by the Taliban. The detainee joined the Eastern Turkistan Islamic Movement, which is suspected of having received training and financial assistance from al-Qaida. He provided a false name when captured.

## 3. Evidence Considered by the Tribunal

The Tribunal considered the following evidence in reaching its conclusions:

    a.  Exhibits: R-1 through R-29.

    b.  Exhibits: D-a and D-b.

    c.  There were no witnesses.

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

**4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses**

The detainee did not request any witnesses or additional evidence; no rulings were required.

**5. Discussion of Unclassified Evidence**

The Tribunal considered the following unclassified evidence in making its determinations:

    a. The recorder offered Exhibit R-1 into evidence during the unclassified portion of the proceeding. Exhibit R-1 is the Unclassified Summary of Evidence and R-2 is the FBI request for redaction statement. While this summary is helpful in that it provides a broad outline of what the Tribunal can expect to see, it is not persuasive in that it provides conclusory statements without supporting unclassified evidence.

    b. Since the detainee did not participate in the Tribunal process, the Tribunal relied heavily on classified evidence in reaching its decision. The Tribunal also considered Exhibits D-a and D-b, unclassified information provided by the detainee and is included as part of the Combatant Status Review Tribunal Decision Report. A discussion of the classified evidence is found in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

**6. Consultations with the CSRT Legal Advisor**

No issues arose during the course of this hearing that required consultation with the CSRT legal advisor.

**7. Conclusions of the Tribunal**

Upon careful review of all the evidence presented in this matter, the Tribunal makes the following determinations:

    a. The detainee was mentally and physically capable of participating in the proceeding. No medical or mental health evaluation was deemed necessary.

    b. The detainee understood the Tribunal proceedings. The Personal Representative (PR) advised the detainee of his rights and read the unclassified summary of the evidence to him. The detainee affirmatively declined to participate in the Tribunal.

    c. The detainee is properly classified as an enemy combatant and was associated with and supported al Qaida.

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

**8. Dissenting Tribunal Member's report**

None. The Tribunal reached a unanimous decision.

Respectfully submitted,

<span style="background:black;color:black">████████████</span>

████████████, Colonel, U.S. Army
Tribunal President

UNCLASSIFIED//~~FOUO~~

ISN #250
Enclosure (1).
Page 3 of 3

UNCLASSIFIED//~~FOUO~~

# UNCLASSIFIED SUMMARY OF BASIS FOR TRIBUNAL DECISION

### (Enclosure (1) to Combatant Status Review Tribunal Decision Report)

TRIBUNAL PANEL: _____18_____

ISN #: _____250_____

## 1. Introduction

As the Combatant Status Review Tribunal (CSRT) Decision Report indicates, the Tribunal has determined that this Detainee is not properly classified as an enemy combatant. In reaching its conclusions, the Tribunal considered both classified and unclassified information. The following is an account of the unclassified evidence considered by the Tribunal and other pertinent information. Classified evidence considered by the Tribunal is discussed in Enclosure (2) to the CSRT Decision Report.

## 2. Synopsis of Proceedings

The unclassified summary of evidence presented to the Tribunal by the Recorder indicated that the detainee is a member of, or affiliated with the Taliban or al Qaida and participated in military operations against the United States or its coalition partners. The detainee did not participate in the Tribunal process or request any witness or additional evidence be produced, but did provide a statement (see exhibit D-b).

## 3. Evidence Considered by the Tribunal

The Tribunal considered the following evidence in reaching its conclusions:

    a. Exhibits: D-a through D-b and R-1 through R-17.

    b. There were no witnesses.

    c. The Detainee provided a statement to the Personal Representative (see exhibit D-b).

## 4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses

There were no witness or additional evidence requests.

## 5. Discussion of Unclassified Evidence

The Tribunal considered the following unclassified evidence in making its determinations:

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

a. The recorder offered Exhibits R-1, R-2 and R-3 into evidence during the unclassified portion of the proceeding. Exhibit R-1 is the Unclassified Summary of Evidence. While this summary is helpful in that it provides a broad outline of what the Tribunal can expect to see, it is not persuasive in that it provides conclusory statements without supporting unclassified evidence. Exhibit R-2 is a FBI request for redaction of national security information, and provided no usable evidence. Exhibit R-3 is the Department of Homeland Security Terrorist Organization Reference Guide, which classifies the Eastern Turkistan Islamic Movement (ETIM) as an Islamic extremist group. The Tribunal found this document to be persuasive in a determination of the status of ETIM but not persuasive in supporting classification of the Detainee as an enemy combatant. Accordingly, the Tribunal looked to classified exhibits for support of the Unclassified Summary of Evidence.

b. In his statement, the Detainee admitted leaving China and entering Afghanistan for weapons training, but maintains his intent was to fight the Chinese government. He maintains he was not involved with the ETIM and denies knowledge of ETIM's association with al Qaida. He maintains his passport was legal. He admits to attending the Uighur training camp in Afghanistan and improving housing there but maintains this was only to improve living conditions for the Uighurs. He admits to training with the AK rifle while at the camp, but denies shooting at anything but targets. He denies being aware that the Uighur camp was donated by the Taliban. He admits he used a false name when arrested but maintains he did so to avoid being deported to China, where he fears he would be tortured and executed. See Exhibit D-b.

c. The Tribunal found the Detainee's denial of involvement with the Taliban, al Qaida, or ETIM, in the face of possible return to his home country (where he could be tortured and executed), to be sincere and genuine. The Tribunal considered the fact that the Detainee did not make this statement under oath nor appear before the Tribunal, and weighed the evidence accordingly.

d. In reviewing the evidence, the Tribunal was guided by Paragraph G-11 of the Implementing Directive (Reference (b)), and assigned a rebuttable presumption of genuineness and accuracy to the Government evidence. Even viewed in this light, a preponderance of the evidence does not support the Detainee's classification as an enemy combatant. The majority of the evidence is consistent with the Detainee's explanation as to his presence and activities in Afghanistan, and very little evidence, if any, was presented to refute or discredit his explanations.

e. The Tribunal also relied on certain classified evidence in reaching its decision. A discussion of the classified evidence is found in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

6. Consultations with the CSRT Legal Advisor

UNCLASSIFIED//~~FOUO~~

ISN #250
Enclosure (1)
Page 2 of 3

UNCLASSIFIED//~~FOUO~~

No issues arose during the course of this hearing that required consultation with the CSRT legal advisor.

### 7. Conclusions of the Tribunal

Upon careful review of all the evidence presented in this matter, the Tribunal makes the following determinations:

      a. The Detainee was mentally and physically capable of participating in the proceeding. No medical or mental health evaluation was deemed necessary.

      b. The Detainee understood the Tribunal proceedings. The Personal Representative (PR) advised the detainee of his rights and read the unclassified summary of the evidence to him. The detainee affirmatively declined to participate in the hearing, with the exception of the statement provided in Exhibit D-b.

      c. The Detainee is not properly classified as an enemy combatant.

### 8. Dissenting Tribunal Member's report

None. The Tribunal reached a unanimous decision.

Respectfully submitted,

 

Colonel, U.S. Air Force
Tribunal President

UNCLASSIFIED//~~FOUO~~

~~SECRET//NOFORN//X1~~

## (U) Combatant Status Review Tribunal Decision Report Cover Sheet

(U) This Document is UNCLASSIFIED Upon Removal of Enclosures (2) and (3).

(U) TRIBUNAL PANEL: ___18___

(U) ISN#: ___250___

Ref:   (a) (U) Convening Order for Tribunal #18 dated 1 November 2004 (U)
     (b) (U) CSRT Implementation Directive of 29 July 2004 (U)
     (c) (U) DEPSECDEF Memo of 7 July 2004 (U)

Encl:   (1) (U) Unclassified Summary of Basis for Tribunal Decision (U/~~FOUO~~)
     (2) (U) Classified Summary of Basis for Tribunal Decision (S/NF)
     (3) (U) Copies of Documentary Evidence Presented (S/NF)
     (4) (U) Personal Representative's Record Review (U/~~FOUO~~)

1.  (U) This Tribunal was convened by references (a) and (b) to make a determination as to whether the detainee meets the criteria to be designated as an enemy combatant as defined in reference (c).

2.  (U) On 16 November 2004 the Tribunal determined, by a preponderance of the evidence, that Detainee #250 is not properly designated as an enemy combatant as defined in reference (c).

3.  (U) Enclosure (1) provides an unclassified account of the basis for the Tribunal's decision. A detailed account of the evidence considered by the Tribunal and its findings of fact are contained in enclosures (1) and (2).

                                                                , COl, USAF

Tribunal President

EXHIBIT D

Abu Bakker Qassim, et al. vs.
George Bush, et al.

CA 05-497

August 1, 2005

Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ABU BAKKER QASSIM, et          :      Civil Action No. 05-497
al.,                           :
          Plaintiffs,          :      August 1, 2005
                               :
v.                             :
GEORGE BUSH, et al.,           :
                               :      4:00 p.m.
          Defendants           :
. . . . . . . . . . . . . :      . . . . . . . . . . .

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE JAMES ROBERTSON
UNITED STATES DISTRICT JUDGE

APPEARANCES:
For the Plaintiffs:        P. SABIN WILLETT, ESQUIRE
                           JASON S. PINNEY, ESQUIRE
                           BINGHAM McCUTCHEN, LLP
                           150 Federal Street
                           Boston, Massachusetts  02110-1726
                           (617) 951-8684
                           BARBARA J. OLSHANSKY, ESQUIRE
                           CENTER FOR CONSTITUTIONAL RIGHTS
                           666 Broadway
                           New York, New York  10012
                           (212) 614-6439
For the Defendants:        TERRY M. HENRY, ESQUIRE
                           ROBERT J. KATERBERG, ESQUIRE
                           JOSEPH HUNT, ESQUIRE
                           VINCENT GARVEY, ESQUIRE
                           U.S. DEPARTMENT OF JUSTICE
                           CIVIL DIVISION
                           20 Massachusetts Avenue, NW
                           Room 7144
                           Washington, D.C.  20530
                           (202)514-4107

Court Reporter:            REBECCA KING, RPR, CRR
                           Official Court Reporter
                           Room 4802-B, U.S. Courthouse
                           Washington, D.C. 20001
                           (202) 898-9398

Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

Abu Bakker Qassim, et al. vs.
George Bush, et al.

CA 05-497

August 1, 2005

Page 2

1              P R O C E E D I N G S

2         COURTROOM DEPUTY:  Civil action number 05-497, Abu

3    Bakker Qassim, et al., versus George Bush, et al.

4         Counsel, could you identify yourselves for the record.

5         MR. WILLETT:  Good Afternoon, Your Honor.  Sabin

6    Willett of Bingham McCutchen.  With me, Jason Pinney, my

7    colleague; Barbara Olshansky and Tina Foster from the Center For

8    Constitutional Rights, for the petitioners.

9         MR. HENRY:  Good afternoon, Your Honor.  Terry Henry

10   with the Department of Justice, and with me at counsel table is

11   Joseph Hunt, Vincent Garvey, and Mr. Robert Katerberg.

12        THE COURT:  Okay.  Well, there are a lot of people in

13   this courtroom, and I don't know the extent to which everybody

14   knows what the background of this matter is, but the proposition

15   of this case is quite simple.  The petitioners in this case have

16   petitioned for writs of habeas corpus.

17        I did with this case as I have done with all of the

18   Guantanamo cases that I have handled, which is quite a number.

19   I issued a stay order at the request of the government.  In the

20   stay order I said, however -- and I'm not quoting what I said,

21   but in general I said, I now have jurisdiction of this matter,

22   so the government can't do anything to these people without

23   advanced notice to opposing counsel and to me.

24        Both sides have appealed that order to the Court of

25   Appeals; the appeal has just recently perfected, I think.  And I

Abu Bakker Qassim, et al. vs.
George Bush, et al.

CA 05-497

August 1, 2005

Page 3

1    received, I think last week, a rather startling motion from the

2    petitioners to the effect that when their counsel finally had a

3    chance to go talk to them in July in Guantanamo, middle of July,

4    they found out that the petitioners have been found by the

5    Combatant Status Review Tribunal to be noncombatants.  And that

6    this happened sometime in -- I don't know, a long time ago, and

7    that nobody bothered to notify either petitioners' counsel or

8    me.

9         And not only that, but when petitioners' counsel asked

10   questions of the government, they were ignored and the questions

11   were not answered.

12        Now the petitioners have asked since these men have

13   been found not to be combatants, that they be released into the

14   non-prison side of the Guantanamo compound until or unless they

15   are relocated by the government.

16        The government resists that notion, and that's why

17   we're here, to have a hearing and find out what on earth is

18   going on here.

19        I will hear from the petitioners.

20        MR. WILLETT:  Thank you very much, Your Honor.  Again,

21   Sabin Willett for the petitioners.

22        I was about to start with a little excursus on the law,

23   because I think that the government in its brief filed Friday

24   has asked you the wrong question.  The question is not, what

25   justification have my clients for release, the question in a

Abu Bakker Qassim, et al. vs.                    CA 05-497                         August 1, 2005
George Bush, et al.

Page 20

1          THE COURT:  Yes, I can understand that.  And there is

2   certainly a practical conundrum that is posed by this situation

3   because of the -- because the petitioners are Uighurs, and we've

4   all read up enough on their status in China to know that that's

5   a serious problem.

6          I must say, though, that I would like to hear you

7   respond to why -- maybe I can understand that you blow off

8   e-mails and don't answer e-mails, but why did you not tell

9   petitioners' counsel what the situation was?  And why did you

10  file a piece of paper in this court three days after the CSRT

11  proceeding implying that they were combatants?

12         MR. HENRY:  Well, Your Honor, a couple of responses to

13  that.  First of all, as to the general matter, we have not been

14  providing notice of an intent to release individuals.  That

15  issue is on appeal to the D.C. circuit.  We've opposed numerous

16  motions seeking some sort of advance notice of release and that

17  sort of thing, and until we are ready to release someone, we

18  have not been giving advance notice.

19         We have also --

20         THE COURT:  Are you telling me that there are lots of

21  NLECs down there who nobody knows are NLECs?

22         MR. HENRY:  Your Honor, the numbers of NLECs have been

23  publicly released by DOD.  You know, as particular individuals

24  in situations where we've had to file factual returns or

25  whatever, obviously, we comply with that order and that is

United States District Court                  202-898-9398              Rebecca King, RPR, CRR
For the District of Columbia                                            Official Court Reporter

Abu Bakker Qassim, et al. vs.                    CA 05-497                          August 1, 2005
George Bush, et al.

Page 21

1    provided to counsel.

2              In situations where factual returns have not been

3    required, and as we've argued in the stay motions we've filed in

4    all these cases, the petitioners have an opportunity to meet

5    with, correspond with counsel and all that sort of thing.

6              THE COURT:  I'll tell you one thing, Counsel.  You've

7    talked me early on into not requiring returns to be filed in the

8    cases.  But I'm going to go back to all of my habeas cases this

9    afternoon and change those orders.  Because if you're telling me

10   that it's only an order to file a return that will allow you to

11   tell opposing counsel that their clients are no longer enemy

12   combatants, that's a little hard for me to understand.

13             MR. HENRY:  But, Your Honor, until we're ready to

14   release someone, I mean, we continue to detain them.  The case

15   is not moot.  The grounds for the detention are, if not the

16   exact subject of, certainly will be affected by what's going on

17   in the Court of Appeals.

18             So the same grounds that animate the stay with respect

19   to proceedings apply across the cases.  And I would also point

20   out that as a practical matter, we have new cases filed

21   virtually every day.  How many of those that we know of right

22   off the bat involve NLECs?  I can't tell you.

23             THE COURT:  Oh, I think you've got a database.  How

24   many people are down there?

25             MR. HENRY:  A little over 500.  Your Honor, I'm telling