IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AHMAD TOURSON,                              )
                                           )
          Petitioner,                      )
                                           )
     v.                                    )     Civil Action No. 05-2370 (EGS)
                                           )
GEORGE W. BUSH, *et al.*,                  )
                                           )
          Respondents.                     )
_____)

## DECLARATION OF DAVID N. COOPER

Pursuant to 28 U.S.C. § 1746, I, Lieutenant Colonel David N. Cooper, Judge Advocate, Judge Advocate General's Corps Reserve, United States Air Force, hereby state that to the best of my knowledge, information, and belief, the following is true, accurate and correct:

1.    I am a Legal Advisor to the Office for the Administrative Review of the Detention of Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba (OARDEC). In that capacity I am an advisor to the Director, Combatant Status Review Tribunals.

2.    I hereby certify that the documents attached hereto constitute a true and accurate copy of the portions of the record of proceedings before the Combatant Status Review Tribunal related to petitioner Ahmad Tourson that are suitable for public release. The portions of the record that are classified or considered law enforcement sensitive are not attached hereto or were redacted by an OARDEC staff member. This staff member also redacted information that would personally identify certain U.S. Government personnel in order to protect the personal privacy and security of those individuals.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 4 Janu 2007

DAVID N. COOPER, Lt Col, USAFR
Staff Judge Advocate
DOD, HQ OARDEC
Washington, DC



# Department of Defense
## Director, Combatant Status Review Tribunals

OARDEC/Ser: 6 8 9

~~FOR OFFICIAL USE ONLY~~

16 JAN 2005

From: Director, Combatant Status Review Tribunal

Subj: **REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN # 201**

Ref: (a) Deputy Secretary of Defense Order of 7 July 2004
(b) Secretary of the Navy Order of 29 July 2004

1. I concur in the decision of the Combatant Status Review Tribunal that Detainee ISN #201 meets the criteria for designation as an Enemy Combatant, in accordance with references (a) and (b).

2. This case is now considered final and the detainee will be scheduled for an Administrative Review Board.

J. M. McGARRAH
RADM, CEC, USN

Distribution:
NSC (Mr. John Bellinger)
DoS (Ambassador Prosper)
DASD-DA
JCS (J5)
SOUTHCOM (CoS)
COMJTFGTMO
OARDEC (Fwd)
CITF Ft Belvoir

~~FOR OFFICIAL USE ONLY~~

UNCLASSIFIED

13 Jan 05

MEMORANDUM

From: Assistant Legal Advisor
To:    Director, Combatant Status Review Tribunal
Via:   Legal Advisor

Subj: LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
       FOR DETAINEE ISN #201

Ref:   (a) Deputy Secretary of Defense Order of 7 July 2004
       (b) Secretary of the Navy Implementation Directive of 29 July 2004

Encl:  (1) Appointing Order for Tribunal #7 of 13 Sept 2004
       (2) Record of Tribunal Proceedings

1. Legal sufficiency review has been completed on the subject Combatant Status Review
Tribunal in accordance with references (a) and (b). After reviewing the record of the Tribunal, I
find that:

     a. The detainee was properly notified of the Tribunal process and elected to participate
     by attending the CSRT, and by providing a sworn statement to the board that was read by
     his personal representative. In addition, the detainee provided additional statements, and
     responded to additional questions posed by his personal representative and by the CSRT.
     *See* Enclosure (3).

     b. The Tribunal was properly convened and constituted by enclosure (1).

     c. The Tribunal substantially complied with all provisions of references (a) and (b).

     d. Note that some information in exhibit R-3 was redacted. The FBI
     properly certified in exhibit R-2 that the redacted information would not support a
     determination that the detainee is not an enemy combatant

     e. Exhibit R-3 contains handwritten notes in the margins. These notes
     appear to be aids in directing the Tribunal to the source of information contained in the
     Unclassified Summary provided to the detainee. These notes do not alter the evidence,
     nor do they affect the legal sufficiency of the evidence.

     f. The detainee did not request that any witnesses or documentary evidence be produced.

     g. The Tribunal's decision that detainee #201 is properly classified as an enemy
     combatant was unanimous.

UNCLASSIFIED

UNCLASSIFIED

Subj:  LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
       FOR DETAINEE ISN # 201

     h.  The detainee's Personal Representative was given the opportunity to review the
record of proceedings, and declined to submit post-tribunal comments to the Tribunal.

2.  The proceedings and decision of the Tribunal are legally sufficient and no corrective action is
required.

3.  I recommend that the decision of the Tribunal be approved and the case be considered final.

KAREN M. GIBBS
CDR, JAGC, USNR

2
UNCLASSIFIED



### Department of Defense
Director, Combatant Status Review Tribunals

13 Sep 04

From: Director, Combatant Status Review Tribunals

Subj: *APPOINTMENT OF COMBATANT STATUS REVIEW TRIBUNAL #7*

Ref: (a) Convening Authority Appointment Letter of 9 July 2004

By the authority given to me in reference (a), a Combatant Status Review Tribunal established by "Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba" dated 29 July 2004 is hereby convened. It shall hear such cases as shall be brought before it without further action of referral or otherwise.

The following commissioned officers shall serve as members of the Tribunal:

<u>MEMBERS</u>:

▮▮▮▮▮▮▮▮▮▮, Colonel, U.S. Army; President

▮▮▮▮▮▮▮▮▮▮, Commander, JAGC, U.S. Navy; Member (JAG)

▮▮▮▮▮▮▮▮, Lieutenant Commander, U.S. Navy; Member

J. M. McGARRAH
Rear Admiral
Civil Engineer Corps
United States Naval Reserve



**HEADQUARTERS, OARDEC FORWARD**
GUANTANAMO BAY, CUBA
APO AE 09360

02 December 2004

MEMORANDUM FOR DIRECTOR, CSRT

FROM: OARDEC FORWARD Commander

SUBJECT: CSRT Record of Proceedings ICO ISN# 201

1. Pursuant to Enclosure (1), paragraph (I)(5) of the *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba* dated 29 July 2004, I am forwarding the Combatant Status Review Tribunal Decision Report for the above mentioned ISN for review and action.

2. If there are any questions regarding this package, point of contact on this matter is the undersigned at DSN ▮▮▮▮▮▮.

CHARLES E. JAMISON
CAPT, USN

SECRET//NOFORN//X1

### (U) Combatant Status Review Tribunal Decision Report Cover Sheet

(U) This Document is UNCLASSIFIED Upon Removal of Enclosures (2) and (4).

(U) TRIBUNAL PANEL: ___#7____

(U) ISN#: ____201____

Ref:   (a) (U) Convening Order for Tribunal #7 of 13 September 2004 (U)
       (b) (U) CSRT Implementation Directive of 29 July 2004 (U)
       (c) (U) DEPSECDEF Memo of 7 July 2004 (U)

Encl:  (1) (U) Unclassified Summary of Basis for Tribunal Decision (U/FOUO)
       (2) (U) Classified Summary of Basis for Tribunal Decision (S/NF)
       (3) (U) Summary of Detainee Testimony (U/FOUO)
       (4) (U) Copies of Documentary Evidence Presented (S/NF)
       (5) (U) Personal Representative's Record Review (U/FOUO)

1. (U) This Tribunal was convened by references (a) and (b) to make a determination as to whether the detainee meets the criteria to be designated as an enemy combatant as defined in reference (c).

2. (U) On 5 November 2004, the Tribunal determined by a preponderance of the evidence that Detainee #201 is properly designated as an enemy combatant as defined in reference (c).

3. (U) In particular, the Tribunal finds that this detainee is a member of, or affiliated with, al Qaida forces, as more fully discussed in the enclosures.

4. (U) Enclosure (1) provides an unclassified account of the basis for the Tribunal's decision. A detailed account of the evidence considered by the Tribunal and its findings of fact are contained in enclosures (1) and (2).

Colonel, U.S. Army
Tribunal President

UNCLASSIFIED//~~FOUO~~

# UNCLASSIFIED SUMMARY OF BASIS FOR TRIBUNAL DECISION

### (Enclosure (1) to Combatant Status Review Tribunal Decision Report)

TRIBUNAL PANEL: _____#7_____
ISN #: _____201_____

## 1. Introduction

As the Combatant Status Review Tribunal (CSRT) Decision Report indicates, the Tribunal has determined that this detainee is properly classified as an enemy combatant and was part of or supporting al Qaida forces. In reaching its conclusions, the Tribunal considered both classified and unclassified information. The following is an account of the unclassified evidence considered by the Tribunal and other pertinent information. Classified evidence considered by the Tribunal is discussed in Enclosure (2) to the CSRT Decision Report.

## 2. Synopsis of Proceedings

The Tribunal held this hearing on 5 November 2004. The Recorder presented Exhibits R-1 and R-2 during the unclassified portion of the Tribunal. The primary exhibit, the Unclassified Summary of Evidence (Exhibit R-1), indicates, among other things, that: the detainee is an Al Qaida fighter; the detainee stated that he left China during September, 2000, and traveled to Kabul, Afghanistan, by way of Kyrgyzstan and Pakistan; the detainee stated that he was a member of the East Turkistan Islamic Movement (ETIM) AKA Sharq (East) Turkistan Islamic Partiyisa (STIP); ETIM is an extremist Islamic organization operating in the eastern region of China; the detainee was captured near Mazir-E-Sharif, Afghanistan, by General Dostum's troops, taken to the Qalai Janghi Prison, and later turned over to U.S. forces; the detainee participated in military operations against the United States or its coalition partners; the detainee stated that he was trained to use an AK-47 rifle; the detainee stated that he traveled to Konduz, Afghanistan, and then on to Mazir-E-Sharif to fight against General Dostum's troops; the detainee was a prisoner at the Qalai Janghi/Mazir-E-Sharif Prison during the Mazir-E-Sharif prison riot. The Recorder called no witnesses.

The detainee participated actively in the Tribunal proceedings. He responded to each of the allegations on the Unclassified Summary of Evidence with the assistance of his Personal Representative. He also answered questions posed by the Personal Representative and the Tribunal members. In sum, he stated he went to Afghanistan to flee religious persecution in his homeland of China. He denied being a member of Al Qaida or the Taliban. The detainee's sworn testimony and the answers to the questions posed to him are summarized in Enclosure (3) to the CSRT Decision Report. The detainee presented no other evidence.

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//FOUO

During the classified session of the Tribunal, the Recorder presented Exhibits R-3 through R-10 without comment. The Personal Representative presented no classified exhibits but did make comments on the classified evidence submitted by the Recorder. After considering all of the classified and unclassified evidence, the Tribunal determined that the detainee is properly classified as an enemy combatant.

**3. Evidence Considered by the Tribunal**

The Tribunal considered the following evidence in reaching its conclusions:

    a. Exhibits: R-1 through R-10 and D-A.

    b. Testimony of the following persons: None.

    c. Sworn statement of the detainee:

        See Enclosure (3) to the CSRT Decision Report.

**4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses**

The detainee requested no witnesses be produced for the hearing.

The detainee requested no additional evidence be produced.

**5. Discussion of Unclassified Evidence**

The Tribunal considered the following unclassified evidence in making its determinations:

    a. The Recorder offered Exhibits R-1 and R-2 into evidence during the unclassified portion of the proceeding. Exhibit R-1 is the Unclassified Summary of Evidence. While this summary is helpful in that it provides a broad outline of what the Tribunal can expect to see, it is not persuasive in that it provides conclusory statements without supporting unclassified evidence. Exhibit R-2, the FBI redaction certification, provided no usable evidence. Accordingly, the Tribunal had to look to other evidence to support the assertions on the Unclassified Summary of Evidence and the Tribunal's conclusions.

    b. As noted in paragraph 2, above, the detainee made a sworn statement at the hearing. In sum, he stated he traveled to Afghanistan from China in September 2000. The detainee claims that he left China because he had no religious freedom. Once the detainee had established himself in Kabul, Afghanistan, he sent for his wife and family, who came to live with him. After the U.S. bombing of Kabul started, the detainee claims that he left his family behind and went to see what the war was like in Konduz (in case he

UNCLASSIFIED//FOUO

UNCLASSIFIED//FOUO

had to fight the Chinese government) and to determine whether northern Afghanistan would be a good place for his family to live. Fifteen to twenty days later, the detainee was captured by General Dostum's forces at Mazir-E-Sharif after having to flee Konduz. The detainee denies being a member of al Qaida. A summarized transcript of the detainee's sworn testimony is attached as CSRT Decision Report Enclosure (3). When considered in conjunction with the classified evidence, the detainee's testimony was not persuasive. A discussion of the classified evidence is found in Enclosure (2) to the CSRT Decision Report.

**6. Consultations with the CSRT Legal Advisor**

None.

**7. Conclusions of the Tribunal**

Upon careful review of all the evidence presented in this matter, the Tribunal makes the following determinations:

   a. The detainee was mentally and physically capable of participating in the proceeding. No medical or mental health evaluation was deemed necessary.

   b. The detainee understood the Tribunal proceedings and actively participated throughout the hearing.

   c. The detainee is properly classified as an enemy combatant because he was part of or supporting al Qaida forces.

**8. Dissenting Tribunal Member's report**

None. The Tribunal reached a unanimous decision.

Respectfully submitted,

Colonel, U.S. Army
Tribunal President

UNCLASSIFIED//FOUO

**UNCLASSIFIED//~~FOUO~~**

**Summarized Detainee Statement**

Tribunal President: Ahmad, you may now present any evidence you have to the Tribunal and you have the assistance of your Personal Representative in doing so. Do you want to present information to the Tribunal and would you like to take a Muslim oath?

Detainee: Yes.

Tribunal President: Recorder, please administer the Muslim oath.

**The Detainee was sworn using the Muslim oath.**

**The Personal Representative read the allegations to the detainee, and also read the detainee's responses to each allegation. The detainee added comments, as he deemed appropriate.**

*3.a.  The detainee is an Al Qaida fighter.*

*3.a.1.  The detainee stated that he left China during September 2000 and traveled to Kabul, Afghanistan, by way of Kyrgyzstan and Pakistan.*

Personal Representative on behalf of the detainee: True, I went to Afghanistan by way of Kyrgyzstan and Pakistan. I went to Afghanistan for independence. I passed through the borders legally. I had a passport and a visa. That does not mean that anyone who travels this way is Al Qaida. There is no religious freedom in China. That is why I brought my family to Afghanistan. Now, would you like to say something further?

Detainee: I want to clear up one thing that he said. I was asking a question, "If any persons pass through those borders legally, with a passport and a visa, does it mean that all those people are a members of Al Qaida or fighters?

Tribunal President: No, it does not mean that.

Detainee: Because, they claim I am an Al Qaida fighter, and then, in number one, they say I passed through those borders, then into Afghanistan, then I become an Al Qaida fighter. What I am trying to say is, they are blaming me for being an Al Qaida fighter. Then they have evidence here that I passed through those borders into Afghanistan. This is the evidence?

Tribunal President: You have anything else you'd like to say?

Detainee: No.

*3.a.2.  The detainee stated that he was a member of the East Turkistan Islamic Movement (ETIM) AKA Sharq (East) Turkistan Islamic Partiyisa (STIP).*

ISN #201
Enclosure (3)
Page 1 of 13

**UNCLASSIFIED//~~FOUO~~**

UNCLASSIFIED//~~FOUO~~

Personal Representative on behalf of the detainee: I don't accept this. I never said I was a member of any of these organizations. I never talked to anyone about this. On early interrogations, I told them I was not a member of those organizations. Now, would you like to add more?

Detainee: Are you saying that you think this Turkistan Islamic Party is part of Al Qaida? Is that what you are looking for?

Tribunal President: I don't know, this information is just given to us and we are asking you to respond to these. I don't know what the assertion is.

Personal Representative: If he remembers during our meeting, I had told him that the United States had recognized the ETIM as a terrorist organization that was associated with Al Qaida. Would you like to add anymore, other than what I said?

Detainee: No.

*3.a.3. ETIM is an extremist Islamic organization operating in the eastern region of China.*

Personal Representative on behalf of the detainee: I am not a member; I have nothing to do with this organization. This region of the country was invaded by the Chinese. For all 30 million Uighur people, this region is called northwestern, not eastern region.

Detainee: It's the Chinese government who calls it the northwestern region.

Personal Representative on behalf of the detainee: No Uighur people are part of the Islamic movement. Uighur people are trying to get their independence from the Chinese government. We fight against the Chinese government. That does not mean I am a member of Al Qaida. We fight against the Chinese government for independence.

Detainee: Independence for my country.

Personal Representative on behalf of the detainee: If all 30 million Uighur people fight against the Chinese government, that does not make them Al Qaida.

Personal Representative: Would you like to say more?

Detainee: If the members have a question about this issue, I will answer, but I have nothing more to add.

Tribunal President: We will have an opportunity to ask you questions after we go through the Unclassified Summary. Ahmad, let me just ask you one question. Are your cuffs on too tight?

UNCLASSIFIED//~~FOUO~~

**UNCLASSIFIED//~~FOUO~~**

Detainee: Yes.

Tribunal President: Let's take a brief recess to allow the guards to come in and loosen the cuffs on him. Personal Representative, please track where we are on the Unclassified Summary.

Personal Representative: Yes, ma'am. We just finished 3.a.3. We will be starting 3.a.4. when we reconvene.

Tribunal President: Okay.

**The Tribunal recessed to have the detainee's handcuffs loosened.**

**The Tribunal reopened with all persons once again present.**

Tribunal President: Personal Representative, will you continue please?

*3.a.4. The detainee was captured near Mazir-E-Sharif, Afghanistan, by General Dostum's troops, taken to the Qalai Janghi Prison, and later turned over to U.S Forces.*

Personal Representative on behalf of detainee: On our way to find a safe place, we had to pass through Mazir-E-Sharif. Then we were captured by General Dostum's troops. We were following lots of people in that area.

Personal Representative: Would you like to say more?

Detainee: I want to make a point. I want to say more about the whole accusation.

Personal Representative: You want us to finish all first, or would you like to say that now? You may.

Detainee: I will tell my story at the end of all these accusations.

Personal Representative: Would you like to say anything more about number four?

Detainee: My going through Mazir-E-Sharif, then being captured by General Dostum's troops; does it explain that I'm an Al Qaida member? Do you have any evidence to prove that I am an Al Qaida member?

Tribunal President: There is supporting evidence that says you are a member of Al Qaida, but this is your opportunity to tell us your story and to rebut any of the government's evidence.

**UNCLASSIFIED//~~FOUO~~**

**UNCLASSIFIED//~~FOUO~~**

Detainee: Everybody passed through on the streets and walked. Foreigners, bad people, good people, soldiers, fighters. Everybody walks through the street and I am passing through the road, then I am captured by General Dostum's troops. It does not explain that all those people are Al Qaida. It is kind of funny looking. Everybody walks in the street, everybody walks.

### 3.b.  The detainee participated in military operations against the United States or its coalition partners.

### 3.b.1.  The detainee stated that he was trained to use an AK-47 rifle.

Personal Representative on behalf of the detainee: True, I did tell them I was trained about 2 hours on a weapon. I am not sure if it was an AK-47. I trained to use the rifle, not to fight against coalition or U.S. forces. I trained to use the rifle for future fighting against the Chinese government. I thought the training might be useful if I had to ever fight the Chinese government. Because I was trained in the use of a rifle does not mean that I was going to use it against the coalition or the American forces. Would you like to say more?

Detainee: No.

### 3.b.2.  The detainee stated that he traveled to Konduz, AF, and then on to Mazir-E-Sharif to fight against General Dostum's troops.

Personal Representative on behalf of the detainee: I went to Konduz, Afghanistan, to find a safe place to go. I went through the Mazir-E-Sharif on the way to a safe place. I never went to go and fight against General Dostum's troops. When I was captured and traveling to safety, I had no weapon, I am not a soldier. I had a family in Kabul, Afghanistan. I was trying to get to my family because the war started. I wanted to get them to some safety in another country, were Uigher people live peacefully. Do you want to add to that, say more?

Detainee: No.

### 3.b.3.  The detainee was a prisoner at the Qalai Janghi/Mazir-E-Sharif Prison during the Mazir-E-Sharif Prison Riot.

Personal Representative on behalf of the detainee: I was taken there when captured; I did not participate in any riot. They dropped bombs and I was injured. I was not a soldier. I have nothing against the Americans. Why would I participate in the riot? All Uighurs, have one enemy, the Chinese. We have no other enemies. Now, would you like to say anything else?

Detainee: I want to remind you of one thing. Until I was captured in Afghanistan, I was captured by General Dostum's troops and then they took me to the Qalai Janghi prison,

**UNCLASSIFIED//~~FOUO~~**

then they turned me into the American prison at Kandahar. During that time, I did not see any American soldiers or any coalition forces or any other people. And then they come back for the accusations. They accused me of being an Al Qaida fighter, then they put evidence in here, but it does not relate to any Al Qaida fighter or anything like that. All these accusations don't really explain anything. If you are accusing me of being an Al Qaida fighter or something else, then prove this. Bring some evidence. But this evidence doesn't really prove that I am a member of Al Qaida or something like that. I want to ask one question, for all these accusations that are on me; do you have any real proof?

Tribunal President: There is some classified information that has evidence, but I guarantee you we will consider the unclassified information, your statement, your answers or responses to the unclassified information and the classified information before we make a decision.

Detainee: I don't know anything about the classified evidence, because I can't prove, I can't make statements for the evidence in here, accusations, but I can't make any proof. I can't bring any evidence for the classified. Then you are just going to make a decision on those classified accusations.

Tribunal President: No, again, I said we will make our decision based on your responses to the Unclassified Summary, your responses to our questions, and any other comments that you have, and we will consider the classified information. Now, Ahmad, do you have any other comments that you would like to add to the unclassified information?

**Detainee pauses.**

Tribunal President: Ahmad, we can ask you some questions and maybe that will assist you in coming up with some additional information you would like to provide to us.

Detainee: Okay.

Tribunal President: Personal Representative, do you have any questions for the detainee?

Personal Representative: Yes, I do. Why did you not have any witness?

Detainee: Because the person that traveled with me, who helped me to leave, the road stopped when we were captured and then the prison riot, when they dropped the bomb, he was dead. And, also because the person is dead and I have my wife in Afghanistan, Kabul, I have no information about her now. I have been here three years and I don't know where she is at, I can't call for a witness for my wife. I don't have any close person.

Personal Representative: When captured, did you have your passport and papers? What happened to them?

ISN #201
Enclosure (3)
Page 5 of 13

**UNCLASSIFIED//~~FOUO~~**

**UNCLASSIFIED//~~FOUO~~**

Detainee:  I left my passport, all the documents at home.  And in Afghanistan, when you travel, you don't really need it, the passport to take with you.

Personal Representative:  Thank you.  I have no further questions.

Tribunal President:  Do any Tribunal members have any questions for the detainee?

Member:  Yes, ma'am.  When you traveled to Kabul in 2000, did you take your family with you then?

Detainee:  My family was not with me.  I went to Afghanistan first for a while, and then my family came to Afghanistan.

Member:  Okay, when did they arrive in Afghanistan?

Detainee:  Approximately, after five, six months.

Member:  When did you leave Kabul?

Detainee:  I left Kabul before, like 15 or 20 days before I was captured by General Dostum's troops.

Member:  Okay.  Where were you when you heard of the attacks on the United States, in New York?

Detainee:  I heard about the attacks in New York, I was in here.

Member:  You said that you had a few hours of rifle training or weapons training, who gave you the training?

Detainee:  I want to make a correction on this question. I never had training on how to shoot a gun, but I looked at a gun and then I learned how to split the parts and bring it back,  put it back. I learned that in Kabul.  Probably 1 hour and 40 minutes.

Member:  Okay, but you never shot the gun?

Detainee:  No.

Member:  Do you remember who gave you the training?

Detainee:  The person who took me to that place.  That person is also dead in the prison riots.

Member:  Is that person another Uighur, or was that person an Afghani or Taliban?

**UNCLASSIFIED//~~FOUO~~**

UNCLASSIFIED//~~FOUO~~

Detainee: He was a Uighur.

Member: Have you ever had any other military or weapons training?

Detainee: No, I have never been in those kinds of training places.

Member: That's all I have right now, ma'am. Thank you.

Detainee: Your welcome.

Member: When you were in Konduz, when was that?

Detainee: It took two days to get to Konduz , as I said to the other gentleman right before, like fifteen to twenty days before I was captured by General Dostum's troops.

Member: When were you captured by Dostum's troops?

Detainee: Fifteen to twenty days after I left my home, because I cannot remember exactly the day or month. That's why I could not tell you the time. If you look at my file, then you would find the exact date.

Member: Had the bombing already started in Kabul?

Detainee: I heard about it in some parts.

Member: So, when you went up to Konduz, the bombing had already started in some parts of Kabul?

Detainee: I heard it in one or two places in Kabul, but I did know if any other places had been bombed, started or not.

Member: Okay, but you did know that the bombing had started in Kabul?

Detainee: I heard the noise.

Member: Heard noise? Why did you go to Konduz?

Detainee: I have told this during interrogations and also I will tell the one thing that has never been asked during interrogations, I would like to tell you now. First, in Afghanistan, Kabul, there started some kind of bombing. Then another person led me to go north. I told them, if there are more people staying in the Northern part of Afghanistan that are Uzbek people, they understand my language, that might be better for me to live in that area. Then that person took me to the Konduz. Secondly, earlier that person mentioned to me, that there was war going on up North. Then if you go there, you

UNCLASSIFIED//~~FOUO~~

**UNCLASSIFIED//~~FOUO~~**

can see how is it. You can have some idea, then it might help you. When he said that, I was kind of interested to go up there see what it looks like. Because they were fighting each other and there was a war going on, I had some kind of interest, if in the future war is going on, and I mean in China, then I would like to go up there to see what it looks like, because I've only seen war at the movies. Then I would have some idea. That's why I went up.

Member: So I want to make sure I understand. The first point you said is that you were looking to see if it was a safe place, maybe for your family. But the second point you said that there was a war going on and you wanted to see it. I don't understand.

Detainee: It is understandable because the reason (sic). First, I said I tried to find a safe place for my family to go. Up there are a lot of Uzbek people, and they can communicate with each other and we can understand the culture and all this stuff. You can get help from the Uzbek people. Secondly, they also told me they're just fighting each other. It is not a big war. Then they told me that there would be one bombing in one month and there is no bombing in another month. I just wanted to look at from a far distance. I wasn't there to go out and fight with anybody or anything like that. I had nothing to do with the fight, and I had no interest in those fights. If you think I went to that place for fighting, it does not make sense, because I would never leave my family behind, then go for fight. I would never do that.

Member: But you did leave them behind, even though Kabul was being bombed.

Detainee: You are right, I did leave my family behind. I went there because they told me Kabul city is not good for foreign people to live in this city. You cannot get along with the people. Then I was interested in going to see the Northern part of Afghanistan because there were Uzbek people we can communicate with, and we can get along. I was trying to see with my own eyes how it looks. That's the reason I went.

Member: You were taught how to assemble and disassemble the weapon. Where was that? Was that in a camp or some type or a school? What was the location?

Detainee: It was not a camp. It was not a school. The place I was staying.

Member: How many people were staying with you? Was it just your family or was it a group of Uighurs? Give me an idea.

Detainee: I was staying with my family. There were no other people besides me.

Member: If there was no one else there, how did the person instruct on the weapon?

Detainee: The person that led me up north, that's the person who came to my house in the past, one or two times. That person taught me, instructed me in my house. He came

ISN #201
Enclosure (3)
Page 8 of 13

**UNCLASSIFIED//~~FOUO~~**

UNCLASSIFIED//~~FOUO~~

to my house by car. One time he had a car and he has a rifle in his car and he showed it to me.

Member: What did you do in Afghanistan? What was your job?

Detainee: First my goal was go somewhere, where people have their freedom to live in peace. Then, after some other people give me some kind of advice or something, or give me some kind of idea, unfortunately, I ended up in Afghanistan.

Member: What was your job in Afghanistan?

Detainee: When I ended up in Afghanistan, I had someone give me the address, then I followed the address in Afghanistan. That place has some other people at that place. Then I stayed there a while, then I don't have any more money left. They asked me what I wanted to do, then I said I would like to do some kind of business. That's the reason I left my country, that is the one reason I left my country. Then they told me business is not really that good in that place right now, we need someone to type. You do a typing job for us. Then I typed for those Uighur people. A typing job.

Member: Who were those Uighur people? What was the organization or the group or the company? Who did you work for?

Detainee: There was like three or four people. They published books. Then they brought stuff and I just typed and put it in the computer. All that kind of work.

Member: I don't have any other questions. Thank you.

Tribunal President: Who was it that gave you the address for the place in Afghanistan, in Kabul?

Detainee: The person from Pakistan.

Tribunal President: Who was that person?

Detainee: There are some people in Turkistan that made me interested in going to Pakistan. Then the person in Pakistan looked at me, that's the person that gave me—I believe his name Alim Jhon.

Tribunal President: Did you know Alim Jhon?

Detainee: No, I did not know that person.

Tribunal President: So someone told you in Kyrgyzstan to meet with Alim Jhon?

UNCLASSIFIED//~~FOUO~~

**UNCLASSIFIED//~~FOUO~~**

Detainee:  The person told me from Turkistan.  I want to make sure everything is clear here.  I got the phone number from Turkistan.  Someone gave me a phone number in Turkistan.  They told me when you come to Pakistan, call this person.  That person will come and pick you up.  Then I went to Pakistan and called that person and he showed up.  And then I found out his name was Alim Jhon.  But I have no knowledge about that person.

Tribunal President:  Who is the person in Kyrgyzstan?

Detainee:  When I came to Kyrgyzstan, the people look at your face and they will recognize you're a foreigner.  Then the person asks me if I was looking for a motel or someplace to stay.  And there is a person that told me the place.  It is like an apartment or something, then you can stay there.  He got my trust, then I followed him and I went to that place.  I told those Uighurs, I explained exactly what I wanted.  I wanted to do some business, I wanted to go somewhere to live in peace, and then they told me that if you go to Pakistan, it would be better.  That's why I went to Pakistan.

Tribunal President:  So was there someone assisting you with your travel from your country to Pakistan and then into Afghanistan?

Detainee:  When I left my country nobody assisted me.  When I came to Pakistan and Afghanistan, then I realized that all these people led me wrong, led me this way to Afghanistan.  My first goal was I wanted to go somewhere, a place to live and do some business.

Tribunal President:  How did you travel from your country to Pakistan and then to Afghanistan?  By plane?  By car?

Detainee:  From my country to Kyrgyzstan I traveled with a car.  Then from Kyrgyzstan to Pakistan I flew.

Tribunal President:  And who paid for that trip?

Detainee:  I spent my own money.

Tribunal President:  What types of business were planning to go into when you arrived in Afghanistan?

Detainee:  When I came to Afghanistan, they showed me the store and the market, because I came here to do some business.  Then it was some kind of grocery store business, like some kind of Chinese goods or things most people usually use for their personal life, for the house or this kind of stuff.

Tribunal President:  Where were you and family staying in Kabul?  Was it a house?  Was it an apartment?  A guesthouse?

ISN #201
Enclosure (3)
Page 10 of 13

**UNCLASSIFIED//~~FOUO~~**

**UNCLASSIFIED//~~FOUO~~**

Detainee: It was a big house. There was a front yard and a backyard. Then, when my family arrived, these people gave me a job typing, and then they prepared the house for my family and for me.

Tribunal President: So originally you were staying in a house or an apartment?

Detainee: There was one room that belonged to those publishing people.

Tribunal President: Earlier, you discussed that bombing had started in Kabul. Why did you not go back for your family then?

Detainee: That's why I was trying to get back, I wanted to get my family, and on the way I was captured.

Tribunal President: Why did you choose Kabul to live?

Detainee: Because that person gave me the address to Kabul, then I went there. Then I started working, doing the typing and I stayed with that job.

Tribunal President: So Kabul was a place that was recommended to you?

Detainee: They did not recommend anything. They just gave me the address. I followed the address and I ended up in that place.

Tribunal President: Did you know anybody in Afghanistan before you moved there?

Detainee: No.

Tribunal President: You said you left your country for independence. Was it your intention to go back to your country at one point or another?

Detainee: I can't say clearly about this, because if I find a place to stay and I can do the business, then I would stay there. If it does not work for me, I might go back to my home country.

Tribunal President: If you were released from here, would you like to go back to your country?

Detainee: No.

Tribunal President: Why not?

Detainee: Because I left that country. There is one reason. I have been tortured by the pressure from the Chinese government. We do not have freedom, nothing. Now, a lot of

**UNCLASSIFIED//~~FOUO~~**

**UNCLASSIFIED//~~FOUO~~**

pressure, a lot of bad things are happening in my home country. I have been here 2 years now. I don't know what is going on all over the world and I have no idea. Also, the Chinese delegation comes here, they also accuse me of being an Al Qaida fighter or other kinds of blame. If I go back to my home country, I'm pretty sure they will kill me. Even if they don't kill me, they will never let me go. Lots of bad things. The government is torturing a lot of people.

Tribunal President: You indicated at one point the reason you wanted to received some of the training on the AK-47, the Kalashnikov, was that you could learn to fight against your country.

Detainee: Yes, if I stayed abroad. If something happened in China against the government, then I will go back to fight against the Chinese government.

Tribunal President: I don't have any other questions. Do any of the Tribunal members have questions?

Members: No, ma'am.

Tribunal President: Personal Representative, do you have any questions or comments?

Personal Representative: I have no further questions or comments ma'am.

Recorder: No, ma'am.

Tribunal President: Ahmad, does that conclude your statement or any comments?

Detainee: I want to mention one more thing. My personal story is almost all included in here now. One more thing. The Chinese invaded our country. It's been a long time. Also, me in here, and any other Uighur people in this prison, I did not know them until I got here. All those Uighur people against the Chinese government in order to get their independence, their country's independence, and their own freedom. If that is a crime, if they are part of the Al Qaida members, if this government punishes me with the same kind of punishment with Al Qaida or other people, then I will have no problem. I will accept this punishment. This is the reason. We wanted to live free and independently like any other nation, and that's the reason they are fighting, to try to get their/our independence and our freedom back. If those people during those kind of moments try to get back our independence and country, if those people are counted as terrorists or part of Al Qaida or against the coalition or this government, then I have nothing to say. We only have one enemy in this world and we don't have any problems with any other people. We have nothing against any other country or any other people.

Tribunal President: Does that conclude your statement Ahmad?

ISN #201
Enclosure (3)
Page 12 of 13

**UNCLASSIFIED//~~FOUO~~**

UNCLASSIFIED//~~FOUO~~

Detainee: We were hoping that we would get some kind of help from the U.S. government. In our country, we were still hoping that the U.S. government will help people who are suffering because of other people. But unfortunately, when we got here, then this government calls us Al Qaida or Taliban. We were kind of disappointed then, but we still hope the U.S. government will help us in the future.

Tribunal President: Continue.

Detainee: We are just disappointed in the U.S. government, but we are still hoping that the U.S. government will help because the U.S. government respects other people's rights.

Tribunal President: All unclassified evidence having been provided to the Tribunal, this concludes this Tribunal session.

## AUTHENTICATION

I certify the material contained in this transcript is a true and accurate summary of the testimony given during the proceedings.

Colonel, U.S. Army
Tribunal President

ISN #201
Enclosure (3)
Page 13 of 13

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

## <u>DETAINEE ELECTION FORM</u>

**Date:** <u>30 Sept 2004</u>

**Start Time:** <u>1410</u>

**End Time:** <u>1500</u>

ISN#: <u>201</u>

**Personal Representative:** ████████████ <u>LCDR, NC, USN</u>
**(Name/Rank)**

**Translator Required?** <u>YES</u>         **Language?** <u>UIGHUR</u>

**CSRT Procedure Read to Detainee or Written Copy Read by Detainee?** <u>YES</u>

-------------------------------------------------------------------------------

**Detainee Election:**

[X]      **Wants to Participate in Tribunal**

[ ]      **Affirmatively Declines to Participate in Tribunal**

[ ]      **Uncooperative or Unresponsive**

**Personal Representative Comments:**

<u>Detainee WILL participate in the Tribunal. There are NO witnesses. Detainee will make an oral</u>
<u>statement.</u>

Personal Representative: ████████████ LCDR, USN   Exhibit: D-A

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED

## Combatant Status Review Board

TO: Personal Representative

FROM: OIC, CSRT (18 September 2004)

Subject: Summary of Evidence for Combatant Status Review Tribunal - TOURSON, Ahmad

1. Under the provisions of the Secretary of the Navy Memorandum, dated 29 July 2004, *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base Cuba,* a Tribunal has been appointed to review the detainee's designation as an enemy combatant.

2. An enemy combatant has been defined as "an individual who was part of or supporting the Taliban or al Qaeda forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who committed a belligerent act or has directly supported hostilities in aid of enemy armed forces."

3. The United States Government has previously determined that the detainee is an enemy combatant. This determination is based on information possessed by the United States that indicates that the detainee is associated with al Qaeda, and participated in military operations against the United States or its coalition partners.

   a. The detainee is an al Qaeda fighter:

     1. The detainee stated that he left China during September, 2000 and traveled to Kabul, Afghanistan, by way of Kyrgyzstan and Pakistan.

     2. The detainee stated that he was a member of the East Turkistan Islamic Movement (ETIM) AKA Sharq (East) Turkistan Islamic Partiyisa (STIP).

     3. ETIM is an extremist Islamic organization operating in the eastern region of China.

     4. The detainee was captured near Mazir-E-Sharif, Afghanistan by General Dostum's troops, taken to the Qalai Janghi Prison and later turned over to U.S. Forces.

   b. The detainee participated in military operations against the United States or its coalition partners.

     1. The detainee stated that he was trained to use an AK-47 rifle.

     2. The detainee stated that he traveled to Konduz, AF and then on to Mazir-E-Sharif to fight against General Dostum's troops.

     3. The detainee was a prisoner at the Qalai Janghi/Mazir-E-Sharif Prison during the Mazir-E-Sharif Prison Riot.

4. The detainee has the opportunity to contest his designation as an enemy combatant. The Tribunal will endeavor to arrange for the presence of any reasonably available witnesses or

UNCLASSIFIED

R-1

UNCLASSIFIED

evidence that the detainee desires to call or introduce to prove that he is not an enemy combatant. The Tribunal President will determine the reasonable availability of evidence or witnesses.

UNCLASSIFIED

UNCLASSIFIED

## Memorandum



To     :   Department of Defense          Date  09/16/2004
           Office of Administrative Review
           for Detained Enemy Combatants,
           Col. David Taylor, OIC, CSRT

From  :    FBI GTMO
           Counterterrorism Division,
           Office of General Counsel,
           Asst. Gen. Counsel ███████████

Subject:   REQUEST FOR REDACTION OF
           NATIONAL SECURITY INFORMATION
           ISN ███████████████

          Pursuant to the Secretary of the Navy Order of 29 July
2004, *Implementation of Combatant Review Tribunal Procedures for
Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba,*
Section D, paragraph 2, the FBI requests redaction of the
information herein marked[1].  The FBI makes this request on the
basis that said information relates to the national security of
the United States[2].  Inappropriate dissemination of said
information could damage the national security of the United
States and compromise ongoing FBI investigations.

  CERTIFICATION THAT REDACTED INFORMATION DOES NOT SUPPORT A
  DETERMINATION THAT THE DETAINEE IS NOT AN ENEMY COMBATANT

          The FBI certifies the aforementioned redaction contains
no information that would support a determination that the
detainee is not an enemy combatant.

          The following documents relative to ISN 201 have been
redacted by the FBI and provided to the OARDEC, GTMO:

FD-302 dated 03/28/2002

_____

  [1]Redactions are blackened out on the OARDEC provided FBI
document.

  [2]See Executive Order 12958

Pg 1 of 2                    UNCLASSIFIED                    R-2

UNCLASSIFIED

```
Memorandum from [REDACTED] to Col. David Taylor
Re:  REQUEST FOR REDACTION, 09/16/2004


If you need additional assistance, please contact Assistant
General Counsel [REDACTED] or Intelligence Analyst [REDACTED]
```

Pg 2 f 2

-2-
UNCLASSIFIED

UNCLASSIFIED//~~FOUO~~

**Personal Representative Review of the Record of Proceedings**

I acknowledge that on _oe_ November 2004, I was provided the opportunity to review the record of proceedings for the Combatant Status Review Tribunal involving ISN #201.

X  I have no comments.

___ My comments are attached.



Name

_____
Signature

_08 Nov04_
Date

ISN #201
Enclosure (5)

UNCLASSIFIED//~~FOUO~~